571 P.2d 706

Ausbert S. SANDOVAL and Catherine Sandoval, Appellants,

v.

SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT & POWER DISTRICT, a Municipal Corporation, and Swett & Crawford, a corporation, Appellees.

No. 1 CA–CIV 3345.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 29, 1977.

Rehearing Denied Nov. 2, 1977.

Review Denied Nov. 22, 1977.

---

210

Thur, Preston & Hungerford by Calvin C. Thur, Scottsdale, for appellants.

Jennings, Strouss & Salmon by Nicholas Udall and M. Byron Lewis, Phoenix, for Salt River Project.

John S. Schaper, Phoenix, for Swett & Crawford.

Mark A. Nesvig, Phoenix, for amicus committee, Arizona Trial Lawyers Ass'n, an

Affiliate of the Ass'n of Trial Lawyers of America.

## OPINION

HAIRE, Judge.

On this appeal questions are raised concerning the Superior Court's jurisdiction to consider certain tort and contract claims urged by an injured workman (appellant) against his self-insured employer (Salt River Project) and its agent hired to administer Workmen's Compensation claims (Swett & Crawford).

This is the third time questions arising out of Mr. Sandoval's industrial injury have been presented to this Court. The two previous instances involved review by this Court, at Mr. Sandoval's request, of Industrial Commission awards entered in the processing of his claim in Workmen's Compensation proceedings. In both instances, the awards of the Industrial Commission were affirmed. A brief history of these Workmen's Compensation proceedings is essential to an understanding of the issues presented in this civil appeal.

On September 7, 1971, Mr. Sandoval sustained an injury by accident arising out of and in the course of his employment with the Salt River Project. At that time the Salt River Project was licensed as a self-insurer pursuant to A.R.S. § 23–961, and the administration of its Workmen's Compensation claims was handled by appellee, Swett & Crawford.

Mr. Sandoval's claim for Workmen's Compensation benefits was accepted, and, on November 15, 1971, the Industrial Commission entered its order approving the establishment of Sandoval's average monthly wage at $883.28. A short time prior to the occurrence of his industrial injury, Sandoval had been suspended from employment for a period of three days because of an alleged violation of the employer's grooming code. The fact that he was not paid for these three days was considered by the employer in the computation of his average monthly wage, resulting in a lower amount than otherwise would have been the case. San-

doval did not object nor file a timely request for hearing concerning the establishment of his average monthly wage.

In August of 1972, a discrimination action was filed in the federal district court on behalf of Sandoval and others concerning the employer's interpretation of its grooming code. On December 18, 1972, this federal action was settled. A term of the settlement provided that Sandoval, along with the other plaintiffs, would:

" . . . receive from the Salt River Project any and all wages *and benefits* lost as a result of suspension from the work force by reason of enforcement of the interpretations of the good grooming guidelines referred to hereinabove." (Emphasis added).

In accordance with the above, Sandoval was paid $114 as retroactive pay for his three-day period of suspension. Approximately one month after the settlement of the federal court action, counsel for Sandoval filed on January 24, 1973, in the workmen's compensation proceeding his objection to the Commission's average monthly wage determination which had been entered in November 1971, and requested a hearing. The Salt River Project objected on the basis of finality and *res judicata.* Mr. Sandoval contended that *res judicata* was not applicable because he had not been properly notified of the prior average monthly wage determination, and therefore the 60-day limitation for requesting a hearing should not apply. On the merits of the average monthly wage question, he urged, *inter alia,* that the $114 retroactive pay received as a result of the settlement of the federal action should be considered so as to increase the average monthly wage amount. The hearing officer apparently did not accept Mr. Sandoval's claim of lack of notice of the average monthly wage determination, and refused to grant the request for hearing. The hearing officer's refusal was later affirmed by this Court. *See* unpublished Memorandum Decision, *Sandoval v. Industrial Commission,* 1 CA–IC 1044, filed December 3, 1974.

Prior to the filing of this Court's Memorandum Decision in 1 CA–IC 1044 relating to the average monthly wage question, the employer had issued a Notice of Claim Status in August 1973 terminating temporary compensation benefits and medical benefits, and finding Sandoval's condition to be stationary. Concurrently with that notice, the employer advised the Industrial Commission that Sandoval had suffered a permanent disability, and a request was directed to the Commission to determine permanent benefits pursuant to A.R.S. § 23–1047. This Notice of Claim Status was objected to by Sandoval, and a hearing was requested. Because of the fact that a review was then pending in this Court on the average monthly wage question, the Commission declined to take any action on the request for hearing or the request for the determination of permanent benefits, being of the opinion that because of the pending appeal it lacked jurisdiction to do so at that time.[1]

After the issuance of the decision of this Court in IC 1044 affirming the average monthly wage determination, and before any action was taken by the Commission to resolve the above-mentioned pending request for hearing concerning the termination of Sandoval's temporary disability benefits, Sandoval filed the civil action which is the subject matter of this appeal in the Maricopa County Superior Court. At the same time, he continued to pursue his claims before the Industrial Commission relating to the termination of his temporary benefits. Thus, simultaneous proceedings were pending before the Industrial Commission and Superior Court concerning Sandoval's claims relating to deprivation of benefits to which he was allegedly entitled under the Workmen's Compensation law. In October 1975, after a hearing before the Commission, the Commission's hearing officer ruled that the employer had properly terminated temporary benefits in August of 1973, and that Sandoval's condition as a result of his industrial injury was then stationary. Review of this Industrial Commission decision was requested and review was

pending in this Court (*Sandoval v. Industrial Commission,* 1 CA–IC 1498) at the time the trial court entered judgment in favor of the employer and its agent, Swett & Crawford, in this Superior Court action.

The Superior Court judgment from which this appeal was taken was granted as a result of the Salt River Project's motion to dismiss and Swett & Crawford's motion for summary judgment. The entry of judgment was based upon principles of *res judicata* and the theory that exclusive jurisdiction over the asserted claims was vested in the Industrial Commission under the Workmen's Compensation statutory scheme.

We now consider the specific claims asserted by Sandoval in the Superior Court action. The first claim for relief was directed solely against the employer, Salt River Project, and sounds in contract. In essence, Sandoval contended that the provision in the federal court settlement agreement which provided that he was to receive from Salt River Project "all wages and benefits lost" contractually bound Salt River Project to consent to an appropriate upward adjustment in his average monthly wage in the Workmen's Compensation proceedings, and that Salt River Project had breached that agreement. He sought compensatory damages for this alleged breach of contract.

In response to the first claim for relief, Salt River Project did not agree with the interpretation placed upon the settlement agreement by Sandoval, but, in any event, pointed to the extensive proceedings before the Commission concerning the determination of Sandoval's average monthly wage, specifically including the question of the effect of the $114 retroactive pay paid pursuant to the settlement for the three-day suspension period. Since these proceedings before the Industrial Commission occurred subsequent to the time the settlement agreement was entered into, Salt River Project contended that any further consideration of the effect of the settlement agreement on Sandoval's average monthly

1. *See Castillo v. Industrial Commission,* 21 Ariz.App. 465, 520 P.2d 1142 (1974).

wage determination was barred by principles of finality and res judicata.[2]

In response to Salt River Project's res judicata argument, Sandoval asserts that his alleged contract right for an adjustment of the average monthly wage as "benefits lost" was not adjudicated in the Workmen's Compensation proceedings because the Industrial Commission did not have jurisdiction over contract rights. We reject this contention. The sole and exclusive jurisdiction to determine all issues of law and fact relating to a claimant's entitlement to compensation benefits is vested in the Industrial Commission. *S. H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 182 P.2d 931 (1947); *Industrial Commission v. Superior Court*, 5 Ariz.App. 100, 423 P.2d 375 (1967). Here, after the federal action settlement was entered, Sandoval specifically sought modification of the average monthly wage amount based upon the retroactive payment for the three-day suspension. If at that time he felt that he had a contract right which precluded Salt River Project from objecting, he should have brought that contract right to the attention of the Commission's hearing officer as one of the facts which "appear to warrant relief" from the otherwise final previously established average monthly wage. The Arizona appellate courts have not hesitated to find that the Commission has jurisdiction to relieve a party from an otherwise final prior award under appropriate circumstances. *See e. g., Parsons v. Bekins Freight*, 108 Ariz. 130, 493 P.2d 918 (1972); *Scott v. Wasielewski*, 89 Ariz. 29, 357 P.2d 614 (1960); *Hopper v. Industrial Commission*, 27 Ariz.App. 732, 558 P.2d 927 (1976); *Garcia v. Industrial Commission*, 13 Ariz.App. 128, 474 P.2d 847 (1970).

Under the circumstances we agree with the employer that the Commission's award on the average monthly wage question coupled with this Court's Memorandum Decision affirming that award precludes, on res judicata principles, further consideration of Sandoval's first claim for relief. We therefore need not consider the employer's further contention that, in any event, exclusive jurisdiction concerning the effect of the settlement agreement on Sandoval's right to workmen's compensation benefits was vested in the Industrial Commission and not in the Superior Court.

Sandoval's "third claim for relief" asserts claims against both the employer and its Workmen's Compensation administering agent, Swett & Crawford. The allegations of the third claim all relate to the motive and intent of the defendants underlying the issuance of notices of claim status in the Workmen's Compensation proceedings, and the alleged wrongful denial of benefits in the processing of his Workmen's Compensation claim. The conduct of the defendants in making decisions and issuing notices of claim status in Sandoval's Workmen's Compensation proceedings is described in the third claim for relief as being intentionally "false and erroneous;" constituting "intentional wrongful suspension of compensation benefits;" and, as causing "undue hardship and great mental suffering and emotional distress." It is stated in the third claim that the claims being made against the defendants are: "for the torts of injurious falsehood, intentional breach of fiduciary duties, false representations, negligence, recklessness, wilful and wanton and outrageous conduct, and intentional infliction of mental suffering."

Although Sandoval asserts that in the Superior Court action he is not "making claim for benefits to which he is entitled under the Workmen's Compensation Act," it is obvious from his complaint that all of the claims are based entirely upon the assertion that Salt River Project and Swett & Crawford either intentionally or negligently failed to provide him with benefits he was or may be entitled to under the Workmen's Compensation laws.

In our opinion the trial court correctly concluded that claims of this nature

---

2. The doctrine of res judicata is applicable to Industrial Commission awards which have become final. *See Talley v. Industrial Commission*, 105 Ariz. 162, 461 P.2d 83 (1969); *Russell v. Industrial Commission*, 104 Ariz. 548, 456 P.2d 918 (1969).

lie within the exclusive jurisdiction of the Industrial Commission. The Arizona Workmen's Compensation Act establishes a comprehensive system for the adjudication of all controversies arising out of the processing of the injured workman's claim for benefits, *see McMurray v. Industrial Commission,* 25 Ariz.App. 614, 545 P.2d 462 (1976), and the jurisdiction of the Industrial Commission is exclusive in that regard. *See Liberty Mutual Insurance Co. v. Western Casualty & Surety Co.,* 111 Ariz. 259, 527 P.2d 1091 (1974); *Lowery v. Universal Match Corporation,* 6 Ariz.App. 98, 430 P.2d 444 (1967); *Industrial Commission v. Superior Court, supra.* Thus, in *O'Connor v. Howard P. Foley Co.,* 17 Ariz.App. 151, 496 P.2d 141 (1972), the Court of Appeals affirmed the trial court's dismissal of an action by an injured employee against his employer. The employee had become dissatisfied with the Workmen's Compensation proceedings and filed an action in the superior court alleging that the employer had breached a contractual duty to abide by the Workmen's Compensation laws and rules. This attempted circumvention of the Industrial Commission and the processes involved in the Workmen's Compensation statutory scheme was not allowed. In *Hixon v. State Compensation Fund,* 115 Ariz. 392, 565 P.2d 898 (App.1977), the appellate court affirmed the trial court's dismissal of a complaint alleging intentional infliction of mental and emotional distress by two State Compensation Fund employees in conspiring to improperly terminate the plaintiff's workmen's compensation benefits. The Court of Appeals held that the superior court lacked jurisdiction, noting that if the appellant's benefits had been improperly terminated, appellant's sole remedy was to proceed before the Industrial Commission. In response to the appellant's characterization of the defendant's conduct as "an intentional infliction of mental and emotional distress," the Court held that the alleged issuance of a defective or wrongful notice of claim status terminating workmen's compensation

benefits could not constitute such a cause of action. *See also, Denman v. Duval Sierrita Corporation,* 27 Ariz.App. 684, 558 P.2d 712 (1976).

■ We hold that regardless of the intentional or negligent manner in which a decision is made, the Workmen's Compensation law provides the exclusive remedy for review of any administrative decision made by a carrier or self-insured employer in which the basic contention of the claimant is that he has been wrongfully deprived of benefits due under the Workmen's Compensation laws. Any other holding would result in multiple jurisdictions being engaged in the resolution of the same basic questions with the possibility of conflicting results. A good illustration of this possibility is evidenced by the case at hand. While this appeal was pending, the Industrial Commission ruled in the employer's favor in the Workmen's Compensation proceeding on Sandoval's contentions concerning the alleged "wrongful and erroneous" Notices of Claim Status and the alleged wrongful deprivation of compensation benefits. This decision of the Industrial Commission was affirmed after review by this Court. *See Sandoval v. Industrial Commission,* 114 Ariz. 132, 559 P.2d 688 (App.1976).[3]

■ Our holding does not entirely preclude the possibility that an actionable tort within the jurisdiction of the superior court might be committed by a self-insured employer or compensation carrier while engaged in the processing of a workmen's compensation claim. For example, if an investigator hired by the Salt River Project were to break into Mr. Sandoval's home and put a concealed tape recorder in his living room, he would clearly have a remedy in the superior court for that wrong, regardless of whether his claim for workmen's compensation benefits was subsequently granted or denied. *See, e. g., Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972).

---

**3.** We recognize the *res judicata* implications flowing from this decision as arguably furnishing an alternative basis for the dismissal of

Sandoval's civil claims, but in the interest of not unduly extending this opinion, we have not discussed this alternative.

But where the essence of the claim is the alleged wrongful deprivation of benefits, the Industrial Commission has the exclusive jurisdiction to adjudicate that controversy. A.R.S. § 23–1061F requires that a carrier give notice to a claimant of any denial of a claim, any change in the amount of compensation or the termination thereof. If the claimant is dissatisfied with the Notice of Claim Status which affects his benefits, he may timely request a hearing before the Commission so as to obtain an adjudication of all facts and issues relating to that controversy. *See* A.R.S. § 23–941A and § 23–947; *McMurray v. Industrial Commission, supra.* If the carrier deprives the claimant of benefits by failing to comply with the Notice of Claim Status previously issued or in any other manner, A.R.S. § 23–1061J provides a remedy whereby the claimant may invoke the Commission's jurisdiction to force compliance.

Sandoval complains that the mere forcing of compliance does not give him an adequate remedy, and that he should be allowed to recover damages. As a policy matter, there might be some basis for this contention. However, rights under the Workmen's Compensation laws are completely statutory, and such arguments are best addressed to the legislature.

We have considered cases from other jurisdictions cited by appellant, arguably supporting his contention that the superior court had jurisdiction over his claims in this matter. *See Stafford v. Westchester Fire Insurance Co.,* 526 P.2d 37 (Alaska 1974); *Flamm v. Bethlehem Steel Co.,* 18 Misc.2d 154, 185 N.Y.S.2d 136 (Sup.Ct.1959); and *Reed v. Hartford Accident & Indemnity Co.,* 367 F.Supp. 134 (E.D.Pa.1973). We have found it difficult to assess the persuasive value of these decisions because of the lack of detail which would afford the basis for a comprehensive comparison of the compensation laws of those jurisdictions with the statutory scheme existing in Arizona. Suffice it to say that to the extent that any of these decisions suggest a result different from that set forth in this opinion, we reject it as contrary to the basic philoso-phy evidenced by Arizona statutory and decisional Workmen's Compensation law.

We have not as yet discussed Sandoval's "second claim for relief." This claim relates to the same conduct alleged in the first claim as creating a contractual right to an increase in Sandoval's average monthly wage, except that in the second claim for relief the conduct of the employer in objecting and allegedly depriving Sandoval of the increase in benefits is characterized as fraudulent. The principles set forth in our extended discussion of Sandoval's third claim for relief are equally applicable to and furnish justification for the trial court's dismissal of the second claim for relief.

The judgment is affirmed.

NELSON, P. J., and FROEB, C. J., concurring.