Gordon C. BRAZIER, Jr., Plaintiff,

v.

TRAVELERS INSURANCE COMPANY, Defendant.

Civ. A. No. C84–1550A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 2, 1984.

J. Calloway Holmes, Jr., Cedartown, Ga., for plaintiff.

Bryan F. Dorsey, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This is an action alleging fraud, deceit, conversion, abuse of process, intentional infliction of emotional distress, and/or misrepresentation arising out of defendant's cessation and withholding of plaintiff's workers' compensation benefits. The defendant has moved to dismiss this action pursuant to Rule 12(b)(6), contending that plaintiff has failed to state a claim upon which relief can be granted. The gist of defendant's argument is that the Georgia workers' compensation system, as administered by the State Board of Workers' Compensation, provides the exclusive remedy for plaintiff's claim and that resort to this court is improper.[1] This case raises important questions of law which the courts of the state of Georgia have not as yet addressed. For the reasons which follow, the court has concluded that defendant's motion to dismiss must be **DENIED.**

### BACKGROUND

Defendant Travelers Insurance Company ("Travelers") is the workers' compensation carrier for Goodyear Tire and Rubber Company ("Goodyear"). The plaintiff, Gordon C. Brazier, was formerly employed by Goodyear. In December 1981, while working for Goodyear in its Cedartown, Georgia plant, Brazier sustained a work-related injury. Thereupon Travelers began paying $115.00 weekly compensation to the plaintiff as disability benefits without the necessity of an award by an administrative law

1. Although cast as a motion to dismiss under 12(b)(6) for failure to state a claim upon which relief can be granted, defendant's arguments that the state workers' compensation system provides the plaintiff with the sole remedy for his claims and that the plaintiff has therefore failed to exhaust his administrative remedies indicate to the court that defendant's motion is probably better brought pursuant to Rule 12(b)(1). The defendant does not, at this point, challenge the legal sufficiency of plaintiff's tort claims themselves; rather defendant argues that this court is without jurisdiction to adjudicate a cause of action sounding in tort against a workers' compensation insurance carrier based on a failure to pay benefits as alleged in the instant case. In other words, defendant argues that remedy for plaintiff's claim lies elsewhere. Accordingly, the motion will be treated as a motion to dismiss for lack of subject matter jurisdiction.

In a supplemental brief in opposition to defendant's motion to dismiss, plaintiff has brought to the court's attention an order of the court in the case of *Goble v. United States Fidelity and Guaranty Co.*, Civil Action No. 582–39 (S.D.Ga. June 21, 1983). In that case, Judge Alaimo held that the deliberate failure to pay workers' compensation benefits may give rise to a right of action in tort. The motion to dismiss under consideration in the instant case does not assert that plaintiff's claims do not state a cause of action in tort. Therefore, the court expresses no opinion as to that issue.

judge for the State Board of Workers' Compensation or any settlement of the claim.

In September 1982, a portion of plaintiff's benefits were garnished, pursuant to a "continuing garnishment" proceeding,[2] to satisfy a judgment against him. Travelers was ordered by the Superior Court of Polk County (Georgia) to pay one half of plaintiff's workers' compensation benefits payable between August 13 and September 21, 1982 into the court to be applied to a judgment for alimony or child support against plaintiff and in favor of his former wife. Travelers paid the remaining one-half of the weekly benefits ($57.50) to the plaintiff. Apparently, this arrangement (one-half of plaintiff's benefits to the Polk County Court and one-half to plaintiff) continued until June 1983. In July 1984, plaintiff filed this action in the Superior Court of DeKalb County (Georgia). Travelers subsequently removed the case to this court and filed its motion to dismiss.

In his complaint, plaintiff alleges several claims, each sounding in tort, arising out of the alleged wrongful "reduction" of his workers' compensation benefits by the defendant. Plaintiff claims that defendant wilfully failed, in its fiduciary duty to him, to file a proper response and raise available defenses to the garnishment proceedings. Complaint at ¶ 4. Plaintiff further alleges that, even if his workers' compensation benefits were the proper subject of a continuing garnishment, Travelers intentionally continued to withhold and convert half of his weekly benefits beyond the expiration of the 179-day limit on continuing garnishment imposed by statute. Complaint at ¶¶ 7–9. Moreover, plaintiff claims, defendant "abused the process of Polk Superior Court by serving a copy of the [garnishment] Order of September 21, 1982 on the plaintiff on February 15, 1983 as a

fraudulent misrepresentation of lawful justification for continuing to withhold his lawful monies from him." Complaint at ¶ 9. Finally, plaintiff alleges that defendant's intentional misconduct caused plaintiff to suffer emotional distress and placed him in such a detrimental financial position that he was subject to foreclosure proceedings. Complaint at ¶ 11. Plaintiff seeks $2,357.50 for reimbursement of the amount withheld and $100,000 for exemplary damages. Complaint at ¶¶ 10, 13. Defendant's motion to dismiss raises the issue of whether the Georgia workers' compensation statute provides the sole remedy for intentional tortious conduct arising out of the cessation or withholding of workers' compensation by a compensation insurer or whether such a claim may be prosecuted as a common law tort action.

## DISCUSSION

### I.

■ The Georgia Worker's Compensation Act, O.C.G.A. § 34–9–1 *et seq.*, is "the Georgia statutory scheme which provides compensation to employees who are the victims of work related injury, disease or death." 29 Encyclopedia of Georgia Law, *Workers' Compensation* § 1 (1980). Like workers' compensation acts throughout the country, the Georgia statute represents an important historic compromise: the employee has given up her right to sue at common law for workplace injury, and the employer has given up her right to assert various common law defenses. The Act provides, in relevant part:

> The rights and the remedies granted to an employee by [the Workers' Compensation Act] shall exclude all other rights and remedies of such employee ...; provided, however, that no employee shall be deprived of any right to bring an

---

**2.** In a continuing garnishment proceeding a judgment creditor may obtain garnishment against any garnishee who is an employer of the person against whom the judgment has been obtained. O.C.G.A. §§ 18–4–110 *et seq.* All debts owed by the employer-garnishee to the employee at the time of service of summons of continuing garnishment upon the garnishee and all debts accruing from the employer to the employee (i.e., wages) from such date of service to and including the one hundred and seventy-ninth day thereafter are subject to continuing garnishment. O.C.G.A. § 18–4–111(a).

action against any third-party tort-feasor, other than ... any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the insured employee and the person providing the benefits.

O.C.G.A. § 34-9-11. The Georgia act, then, is designed to provide the exclusive remedy against an employer for injuries by accident arising out of and in the course of employment. *Allied Chemical Corp. v. Peacock*, 151 Ga.App. 278, 259 S.E.2d 681 (1979). The Workers' Compensation Act, thereby bars all suits at common law brought by an employee against her employer for workplace accidents covered by the terms of the statute. A court of law simply does not have jurisdiction over claims which are covered by the provisions of the workers' compensation law because an injured workers' remedies are limited to those set forth in the detailed provisions of the Act. The question raised by the instant case is whether a workers' compensation insurance carrier which engages in conduct which rises to the level of actionable fraud, deceit, misrepresentation, abuse of process, intentional infliction of emotional distress and/or conversion in regard to the withholding of compensation benefits which it was obligated to pay and had been paying,[3] may be sued at law, or whether the exclusive remedy for injury caused by such conduct is in accordance with the statutory remedy provided in the Workers' Compensation Act.

Defendant Travelers was the Goodyear Tire and Rubber Company's compensation insurer at all times relevant to the facts giving rise to the instant claim. It did not act in any capacity in its relationship with Goodyear other than to provide workers' compensation insurance to the employer. Nothing in the complaint or plaintiff's response to defendant's motion to dismiss indicates otherwise. In Georgia, a workers' compensation insurer enjoys the same immunity from common law tort action as the employer. See O.C.G.A. § 34-9-1(3); *Sims v. American Casualty Co.*, 131 Ga. App. 461, 206 S.E.2d 121, *aff'd sub nom. Providence Washington Ins. Co. v. Sims*, 232 Ga. 787, 209 S.E.2d 61 (1974). In order for the instant action against this insurer to be maintainable, then, it must be found that plaintiff is seeking redress for an injury which falls outside the scope of the Workers' Compensation Act and therefore is not subject to the bar to common law action imposed by O.C.G.A. § 34-9-11.

 It is, of course, axiomatic that "[t]he exclusivity of the Act is irrelevant to causes of action which are not covered by it." *Reed v. Hartford Accident & Indemnity Co.*, 367 F.Supp. 134, 135-36 (E.D.Pa. 1973). To a large extent, the scope of the exclusive remedy in Georgia is governed by O.C.G.A. § 34-9-1(4), the pertinent portion of which defines injury compensable under the Act as "injury by accident arising out of and in the course of the employment."

---

**3.** At this point it should be noted that this is not a case of an insurer's mere refusal to provide compensation, wilful or negligent delay in claim processing, or "simple" wrongful termination (whether negligent or wilful) of benefits. Plaintiff has alleged facts which, if proved, might provide the basis for a finding that defendant denied plaintiff his rightful benefits by engaging in fraud, deceit, misrepresentation, abuse of process, and/or conversion (each being distinct and cognizable tortious conduct). For this reason, the court finds cases involving wilful or negligent delay, denial, or termination of workers' compensation benefits *without more* to be of little assistance in the resolution of this case. Such cases include: *Hixon v. State Compensation Fund*, 115 Ariz. 392, 565 P.2d 898 (Ariz.App. 1977) (wilful termination); *Noe v. Travelers Ins. Co.*, 172 Cal.App.2d 731, 342 P.2d 976 (1959) (delay); *Sullivan v. Liberty Mutual Ins. Co.*, 367 So.2d 658 (Fla.App.), *cert. denied*, 378 So.2d 350 (Fla.1979) (wilful termination); *Hicks v. Bd. of Educ.*, 77 Ill.App.3d 974, 33 Ill.Dec. 683, 397 N.E.2d 16 (1979) (deliberate failure to process claim); *Physicians & Surgeons Hospital, Inc. v. Leone*, 399 So.2d 806 (La.App.), *cert. denied*, 401 So.2d 993 (La.1981) (failure to pay benefits); *Chavez v. Kennecott Copper Corp.*, 547 F.2d 541 (10th Cir.1977) (applying New Mexico law) (denial of claim); *Whitten v. American Mutual Liability Ins. Co.*, 468 F.Supp. 470 (D.S.C.1977), *aff'd without opinion*, 594 F.2d 860 (4th Cir. 1979) (applying South Carolina law) (wilful termination).

The term "accident" has been held to encompass intentional torts. See *Burbank v. Mutual of Omaha Ins. Co.*, 484 F.Supp. 693 (N.D.Ga.1979), *aff'd*, 616 F.2d 565 (5th Cir.1980); *Southern Wire & Iron, Inc. v. Fowler*, 217 Ga. 727, 124 S.E.2d 738 (1962). However, not every injury, much less every intentional tort committed by an employer against an employee, is necessarily covered by the terms of the Act. See *Smith v. Rich's Inc.*, 104 Ga.App. 883, 123 S.E.2d 316 (1961) (employee's action against employer for false imprisonment not barred by compensation statute); *Skelton v. W.T. Grant Co.*, 331 F.2d 593 (5th Cir.1964) (employee's action against employer for false arrest and illegal detention not barred by Georgia Workmen's Compensation Act).

▉ An injury by accident compensable through workers' compensation must "arise out of" the employment. This means that there must be some appropriate causal connection between the employment and the injury. See *Helton v. Interstate Brands Corp.*, 155 Ga.App. 607, 271 S.E.2d 739 (1980); *State Dept. of Labor v. Yates*, 131 Ga.App. 71, 205 S.E.2d 36 (1974). In addition to this causal connection, an independent requirement is that the compensable injury must "arise in the course of" the employment. This requirement is understood to refer to the time, place, and circumstances of the injury; an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of her duties and while she is fulfilling those duties. See *New Amsterdam Casualty Co. v. Sumrell*, 30 Ga.App. 682, 118 S.E. 786 (1923).

## II.

There is no case in Georgia which addresses the question of whether an injury caused by intentional termination or disruption of the payment of compensation benefits by an insurer is actionable despite the exclusive remedy provision of the Act. In *Stafford v. Westchester Fire Ins. Co. of N.Y., Inc.*, 526 P.2d 37 (Alaska 1974), the plaintiff alleged that the insurance carrier did more than delay payment of his workers' compensation benefits; he alleged, just as the plaintiff does here, that the carrier intentionally and maliciously misled him about his right to compensation and discouraged him from exercising that right, resulting in emotional injury. The Supreme Court of Alaska became the first court to hold that where there is intentional tortious conduct by a workers' compensation carrier which goes beyond the bounds of untimely payments, the immunity from suit provided by the workers' compensation law is lost. *Id.* at 43–44.

Several states have followed the lead of the Alaska court. See 2A Larson, Workmen's Compensation Law § 68.34(c) at 13–74 n. 49.20 (1983) (collecting cases). In *Coleman v. American Universal Insurance Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979), the Supreme Court of Wisconsin, after noting that the principle of exclusivity of the workers' compensation remedy is firmly entrenched in Wisconsin law, concluded that the state workers' compensation act does not bar a common law action against a compensation insurer for the intentional tort of bad faith for failure to honor or pay a compensation claim. The court reasoned that the injury sustained by the plaintiff-worker due to the alleged bad-faith conduct of the defendants did not meet the statutory definition of a compensable injury:

Moreover, the event—the alleged intentional and malicious withholding of compensation payments—which caused the injury *did not arise out of the employment but occurred long after the employment had ceased* and *had its genesis in conduct by the insurer that arose not out of the employment but out of the contractual obligation of the insurer to pay.*

The injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed *injury*

*was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act.* The injury for which recovery is sought in the present actions did not occur while the plaintiff was employed or while he was performing services growing out of and incidental to his employment. As the plaintiff repeatedly and correctly stresses in his brief, this action is based not on the original work-related injury but on *a second and separate injury* resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision does not bar the claim.

273 N.W.2d at 223 (emphasis added). The court went on to reject, as spurious, the argument that the second injury (arising from the intentional withholding of benefits) should be reviewed as merely an extension or aggravation of the prior work-related injury as such reasoning "relies on an extended 'but for' analysis that leads to preposterous results." *Id.* at 223.

In *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220 (Me.1978), the plaintiff brought suit against her employer's workers' compensation carrier seeking damages that she claimed resulted from its termination of benefit payments, including payment of medical expenses. The defendant insurer asserted that dismissal of the claim was required because the Maine Workmen's Compensation Act provided an exclusive remedy. The Supreme Judicial Court of Maine, after noting that under the Maine compensation statute (just as under the Georgia law) an "employer" includes the employer's compensation carrier for most purposes, concluded that the insurer's argument was not persuasive. In reasoning similar to that put forth by the Court in *Coleman,* the *Gibson* Court pointed out:

the case arises not out of appellant's original employment relationship but out of her relationship to the insurance carrier *after* her basic remedies as an injured employee had been settled through procedures provided by the Act. The severe

mental distress she alleges as *the injury resulting from appellees' actions was not an injury "arising out of the employment" within the meaning of the Act.* Her complaint may be deemed to allege that appellant had pursued her remedies under the Act and that the appellees had willfully deprived her of the benefits she had become entitled to under an approved compensation agreement. *The status she asserts is not that of employee seeking a remedy against her employer but of a compensation claimant with established remedial rights.*

387 A.2d at 222 (emphasis added).

In other cases raising the issue after *Stafford,* and perhaps the majority of such cases, for one reason or another, a cause of action was held not to lie. See 2A Larson, *supra,* § 68.34(c) at 13–72 n. 49.19 (collecting cases). In *Sandoval v. Salt River Project Agricultural Improvement & Power District,* 117 Ariz. 209, 571 P.2d 706 (Ariz.App.1977), the Court of Appeals of Arizona held that "where the essence of the claim is the alleged wrongful deprivation of benefits, the Industrial Commission (Arizona's equivalent of Georgia's State Board of Workers' Compensation) has the exclusive jurisdiction to adjudicate that controversy." 571 P.2d at 712. Although the complaint alleged, among other things, intentional breach of fiduciary duty, false representations, outrageous conduct, and intentional infliction of mental suffering, the court specifically rejected the conclusion of the Alaska Supreme Court in *Stafford* "as contrary to the basic philosophy" of the Arizona workers' compensation system. *Id.* However, it should be noted that the *Sandoval* court never considered the rationale upon which the Wisconsin and Maine courts concluded that their states' workers' compensation statutes would not prevent a common law tort action under the facts alleged. Similarly, in *Young v. United States Fidelity & Guaranty Co.,* 588 S.W.2d 46 (Mo.App.1979), the Missouri Court of Appeals reached the same conclusion, refusing to permit a tort action chal-

lenging the insurer's alleged bad faith refusal to pay further compensation benefits. The Missouri court, however, seems to have rested its conclusion in large part on several features of the Missouri Workmen's Compensation Act not present in Georgia law. *Id.* at 48.

### III.

While the court recognizes the vital purpose of the Workers' Compensation Act and the important role played by the exclusivity concept in effectuating the statute's remedial goals, the court is persuaded by the reasoning of the *Stafford, Coleman,* and *Gibson* courts that intentional tortious conduct related to the disruption of the payment of workers' compensation benefits neither "arises out of" nor "arises in the course of" the employee's employment within the meaning of those phrases in the Georgia Workers' Compensation Act. A noted commentator has pointed out that "cases involving allegations of deceit, fraud, and false representation can best be sorted out by distinguishing those in which the deceit precedes and helps produce the injury, and those in which the deceit follows the injury and produces a second injury or loss." 2A Larson, *supra,* § 68.32 at 13–45. Plaintiff's allegations in the instant case place it squarely among the latter type of case wherein the exclusive remedy provision generally presents less of an obstacle to the maintenance of a common law tort action.

■ Injury caused by conduct such as that alleged in the instant case cannot be said to "arise out of" employment because the causal connection to the workplace accident is unduly attenuated. Unless causation-in-fact is to be extended beyond any reasonable limit contemplated by the concept, it cannot be said that injury caused by the intentional conduct of a compensation carrier subsequent to a workplace accident, conduct alleged to involve fraud, misrepresentation, or intentional infliction of emotional distress, realistically constitutes "injury by accident arising out of ... the employment." Moreover, the conduct by the defendant which plaintiff complains of and the resulting injury herein alleged cannot be said to have occurred "in the course of" employment as the time, place and circumstances of plaintiff's alleged injury by misrepresentation exhibit no connection to his work at Goodyear. In fact, the alleged misrepresentation which forms the basis of plaintiff's claimed injury came about more than one month after plaintiff's employment with Goodyear was terminated and therefore cannot realistically constitute "injury by accident arising ... in the course of the employment."

### IV.

Although defendant did not argue that the "penalty provision" in Georgia's Workers' Compensation Act, O.C.G.A. § 34–9–221, requires this court to conclude that the legislature adequately provided a remedy for the wrongs alleged by plaintiff, this court will address the argument, as it has been, at least in part, the basis for court decisions in other jurisdictions denying the relief claimed by plaintiff in the instant case. See, e.g., *Hicks, supra,* 33 Ill.Dec. 686–687, 397 N.E.2d at 19–20. The relevant statutory provisions regarding payment of workers' compensation benefits read as follows:

(a) Income benefits shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability is controverted by the employer.

(b) The first payment of income benefits shall become due on the fourteenth day after the employer has knowledge of the injury or death, on which day all income benefits then due shall be paid....

. . . .

(c) If any income benefits payable without an award are not paid within 14 days after becoming due, there shall be added to the accrued income benefits an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the accrued income

benefits unless notice is filed under subsection (d) of this Code section or unless this nonpayment is excused by the board after a showing by the employer that owing to conditions beyond control of the employer the income benefits could not be paid within the period prescribed.

. . . .

(j) The board or any administrative law judge shall issue such orders as may be necessary to enforce the penalty provisions of this Code section.

O.C.G.A. § 34–9–221. See also, O.C.G.A. § 34–9–108(b)(2) (authorizing State Board of Workers' Compensation to award attorneys' fees and costs to enforce rights under § 34–9–221 where employer has failed to comply without reasonable grounds). Termination of benefits due a claimant without reason has been held to justify the imposition of a 15% penalty assessment by the State Workers' Compensation Board on the overdue benefits under § 34–9–221(e). See *Sadie G. Mays Memorial Nursing Home v. Freeman*, 163 Ga.App. 557, 295 S.E.2d 340 (1982).

Initially, it should be noted that when a penalty has been built into a compensation act to cover employer misconduct, the boundaries of the general exclusivity principle are often expanded to take in that conduct. See Larson, *supra*, § 69.30 at 13–130. Inspite of this general approach, in each case relied on above permitting a cause of action for tortious conduct related to the withholding of compensation benefits, the court held that the action could be maintained notwithstanding a penalty provision which would apply to the circumstances before the court.

Thus, in *Stafford*, the Alaska court held that the penalty provision for failure to pay (a provision strikingly similar to that in O.C.G.A. § 34–9–221) does not provide the sole remedy available to an employee where the tortious conduct involved goes beyond the bounds of untimely payments. 526 P.2d at 43–44. Likewise, in *Coleman*, the Wisconsin Supreme Court expressed the view that "a [statutory] penalty for

delayed worker's compensation payments does not preclude a cause of action for the intentional tort of bad faith for failure to honor or pay the claim," and held that the penalty provision did not bar the *additional* remedy at common law for intentional wrongdoing which goes beyond the mere late payment of benefits. 273 N.W.2d at 224.

■ The Georgia courts have not interpreted O.C.G.A. § 34–9–221 in the circumstances of the facts alleged in the instant case. In *Sadie G. Mays Memorial Nursing Home v. Freeman, supra,* the Georgia Court of Appeals did not address the issue of whether the availability of statutory penalties would preclude a compensation claimant from obtaining relief through a common law action for intentional tortious conduct related to the nonpayment of benefits. Finding the reasoning of the *Stafford* and the *Coleman* courts to be persuasive, this court is of the view that the Georgia penalty provision will not preclude plaintiff from maintaining his claim for damages. Much of this conclusion, of course, is properly intertwined with the view that plaintiff's claim, being one for intentional wrongdoing and not for compensation, is not controlled by the provisions of the state workers' compensation act in the first place.

## CONCLUSION

■ The court has given careful consideration to defendant's argument that the provisions of the Georgia Workers' Compensation Act, O.C.G.A. §§ 34–9–1 *et seq.*, preclude the plaintiff from pursuing an action at law for injury arising out of alleged misrepresentations and/or other intentional misconduct in connection with the payment and withholding of workers' compensation benefits by a compensation insurer. The courts of Georgia have not yet addressed the important issues raised by this litigation. In the absence of such guidance, this court should not construe the Georgia statute as being designed to deprive an employee of any common law action which she might otherwise have against her "employ-

er," unless the action which she seeks to assert is one for an injury as to which relief has actually been granted under the compensation laws. *Skelton,* 331 F.2d at 595. Thus, where, as here, the alleged intentional wrongdoing and injury arises not out of employment or in the course of an ongoing employment relationship but instead arises subsequent to and independent of any employment relationship, a claim which seeks to redress such injury is not barred by the Georgia workers' compensation laws. Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief can be granted (or for lack of subject matter jurisdiction) is hereby DENIED.