VIOLETTE, Justice.
 

 Michael Procise appeals from a judgment of Superior Court, Cumberland County, granting the defendants’ motion for summary judgment and dismissal, and denying Procise’s motion for leave to pursue further discovery. Although we disagree in part with the reasoning of the Superior Court, we nevertheless affirm the judgment.
 

 I.
 

 Michael Procise was an employee of General Electric Company in South Portland as a “burner”, cutting pieces of steel with a cutting torch, beginning in 1974 and was a member in good standing of Local No. 2139 of the International Association of Machinists and Aerospace Workers, A.F.L.-C.I.O. (Union). On June 28, 1976, General Electric and the Union entered into a three year collective bargaining agreement that recognized the Union as the employees’ sole bargaining agent with respect to rates of pay, wages, hours and other conditions of employment. Articles 16 and 17 of the agreement established grievance and arbitration procedures with respect to the above matters. Appendix B of the agreement provided for increased benefits for pensions, income extension aid and short and long term sickness and accident insurance benefits.
 

 Procise claims that he suffered a back injury on September 28, 1976. He worked his regular shift on September 27th and 28th, but did not work on September 29th. Procise does not cite any particular incident that caused his injury, but rather indicates that he first became aware of the injury when he awoke with back pain and had difficulty getting out of bed. He telephoned General Electric’s dispensary twice on September 30, 1976 advising them that he was at Maine Medical Center with back pain.
 

 Procise returned to work from October 11 until October 15th when he again went to Maine Medical Center with back pain. On October 18, 1976, he first visited a chiropractor, Dr. Robert P. Lynch, Jr., who then undertook the treatment of Procise’s back injury. Procise remained out of work again for about a month and a half.
 

 All parties agree that, had Procise’s injury arisen out of and in the course of his employment, as defined by the Maine Workers’ Compensation Act, 39 M.R.S.A. § 1
 
 et seq.,
 
 he was entitled to receive workers’ compensation benefits through General Electric’s Workers’ Compensation insurance carrier, Electric Mutual Liability Insurance Company (Electric Mutual). Under the Act, Procise could receive up to % of his average gross weekly wage for total incapacity. If the injury, however, did not arise out of or in the course of his employment, the injury was covered by General Electric’s sickness and accident insurance program administered by Metropolitan Life Insurance Company. This program involved a short-term plan, under which the parties agreed that the employee would receive up to 60% of his weekly earnings during his initial disability, up to 26 weeks; and then, an unspecified amount under a long-term disability plan.
 

 On October 19, 1976, Procise filled out the employee portion of a Statement of Claim for weekly sickness and accident benefits. General Electric benefits technician, Carol Grindel, received the Statement of Claim. On or about October 28, 1976, Procise indicated in his response to one question that his disability was not caused by an accident. On October 22, 1976, Dr.
 
 *1362
 
 Lynch completed the doctor’s portion of the Statement of Claim, stating that the injury was, in his opinion, the result of injury arising out of and in the course of employment. All parties agree that, with Pro-cise’s permission, Grindel telephoned Dr. Lynch on or about October 28, 1976 and received the doctor’s permission to change his statement to state that the injury did not arise out of employment. She noted the change on her copy of the form “per Dr. Lynch 10/28/76.”
 

 Procise alleges that Grindel took this action out of bad faith to deliberately steer his claim in the most advantageous direction for General Electric. The defendants argue that Grindel acted in Procise’s best interest to obtain his benefits as quickly as possible since the cause of the injury was unknown and the difference between the two benefits was negligible.
 

 Procise received sickness and accident benefits from October 19, 1976 until November 29,1976 when he returned to work. Procise claims that he requested a light duty work assignment when he returned to work but this was denied by Richard Ox-ton, a General Electric employee responsible for job assignment and reassignments; and that he, Procise, was not informed until March 14, 1977, that he would need a statement by a treating physician before he could be placed on light duty. On March 16,1977, Dr. Lynch wrote such a letter to William Ellinger, a General Electric employee who managed union relations. Procise indicates that light duty work was available, but General Electric responds that no suitable work was available. On March 23, 1977, Procise ceased working for General Electric permanently.
 

 On March 25, 1977, Procise completed a second Statement of Claim for weekly sickness and accident benefits. Again, he answered that the disability was not caused by an accident. Dr. Lynch again indicated that the disability resulted from an injury arising out of and in the course of employment. The Statement of Claim was altered so that Dr. Lynch’s statement agreed with Procise’s. Procise claims, however, that he never authorized this change. The defendants state that the change was made with the specific authorization of both Dr. Lynch and Procise.
 

 Procise received sickness and accident benefits from March 31 through September 28, 1977, a total of 26 weeks including his previous benefits. Although General Electric informed him of the availability of long term disability benefits, Procise did not submit an application for long-term disability insurance benefits when his short-term disability benefits ended.
 

 On October 28,1977, Procise, through his attorney, filed a Petition for Award of Compensation with the Worker’s Compensation Commission, claiming he sustained work related injuries on September 28, 1976 and on March 22, 1977. On April 1, 1980, he filed a Petition for Lump Sum Settlement in the amount of $20,000.00 with the Commission, which was approved April 11, 1980. In the petition, Procise stated he requested “that all compensation which may be or become due me in weekly payments from said employer (General Electric) on account of my injury of 9/28/76 and 3/22/77 be commuted by your Commission, and that payment thereof be made in a Lump Sum of $20,000.00 according to the provision of the Workers’ Compensation Act for the following reason: It is in my best interest.” The Petition then stated “A Lump Sum Settlement of a case is a FINAL SETTLEMENT.” Procise was represented by counsel in the Lump Sum Settlement proceeding.
 

 II.
 

 On May 21, 1981, Procise filed a complaint in Superior Court against five parties: Electric Mutual, General Electric, Carol Grindel, Richard Oxton, and William El-linger. In his complaint, Procise makes various allegations against these defend
 
 *1363
 
 ants arising out of the handling of his compensation for his back problems. The complaint alleged sixteen counts: Count I, Bad Faith against General Electric; Count II, Breach of Statutory Duties against General Electric; Count III, Interference with Protected Property Interest against General Electric; Count IV, Breach of Fiduciary Duty against General Electric; Count V, Severe Emotional Distress against General Electric; Count VI, Fraud and Deceit against General Electric; Count VII, Bad Faith against Electric Mutual; Count VIII, Breach of Statutory Duties against Electric Mutual; Count IX, Interference with Protected Property Interest against Electric Mutual; Count X, Breach of Fiduciary Duty against Electric Mutual; Count XI, Severe Emotional Distress against Electric Mutual; Count XII, Fraud and Deceit against Electric Mutual; Count XIII, Bad Faith against the three General Electric employees; Count XIV, Interference with Protected Property Interest against the three General Electric employees; Count XV, Severe Emotional Distress against the three General Electric employees; Count XVI, Fraud and Deceit against the three General Electric employees.
 

 On September 26, 1983, the defendants filed a motion to dismiss under M.R.Civ.P. 12(b)(6) alleging that Procise failed to state a claim upon which relief could be granted. They also filed a motion for summary judgment under M.R.Civ.P. 56, alleging that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law. On October 19, 1983, Procise filed a motion under M.R.Civ.P. 56(f) for leave to pursue further discovery, stating that the defendants’ exhibits were not appended to its motion for summary judgment and that he did not receive them until October 17, 1983, three days before the date set for the hearing on the motion for summary judgment and dismissal; that he did not have sufficient time to submit affidavits in opposition to the defendants’ summary judgment motion; that the issues relating to Procise’s failure to use and exhaust the union grievance procedure required additional time because General Electric had ceased operations in Maine and presumably moved its records out of the state; that no affidavits in support of the defendants’ summary judgment motion had been filed; and that substantial justice required that the motion be granted.
 

 The affidavit of Carol Grindel, filed with the court on October 19, 1983 was presented to Procise on October 20, 1983, the day of the hearing. The affidavit of Richard Oxton was filed with the court and presented to Procise on October 20, 1983. The depositions of Grindel and Oxton were not filed with the court until November 18, 1983, the day after the filing of the court’s Decision and Order.
 

 On November 17, 1983, the trial justice granted the defendants’ motions for summary judgment and dismissal and denied Procise’s motion for leave to pursue further discovery. The Superior Court dismissed Procise’s claims challenging the Lump Sum Settlement of $20,000 on grounds of coercion and fraud, finding a lack of subject matter jurisdiction. The court also granted the defendants’ summary judgment motion on Procise’s claims based on the collective bargaining agreement and claims under the Workers’ Compensation Act for benefits lost prior to the negotiation of the Lump Sum Settlement. The court stated that these claims either should have been pursued under the grievance procedures set forth in the collective bargaining agreement or were barred by the Lump Sum Settlement under the Workers’ Compensation Act. The court, however, failed to indicate which counts of the complaint were related to which part of its decision. Procise appeals from this decision.
 

 
 *1364
 
 III.
 

 Procise contends that the defendants failed to comply with M.R.Civ.P. 56
 
 [1]
 
 because: 1) the supporting affidavits were not attached to the motion for summary judgment; 2) two affidavits did not contain a recitation or showing that the affidavits were based on personal knowledge; and 3) the affidavits were presented to Procise’s counsel on the day of the hearing on the motion for summary judgment. Additionally, Procise alleges that the trial court erred in refusing his motion for leave to pursue further discovery under M.R.Civ.P. 56(f). Procise made no showing before the trial court or before this Court that any failure to comply with Rule 56 had any prejudicial effect on his substantial rights. We must disregard any ruling or order by the trial court that does not affect the substantial rights of the parties.
 
 See,
 
 M.R. Civ.P. 61,
 
 Farrell v. Theriault,
 
 464 A.2d 188, 192 (Me.1983);
 
 Blue Rock Industries v. Raymond International, Inc.,
 
 325 A.2d 66, 79 (Me.1974). We, therefore, affirm the Superior Court’s decisions on these issues.
 

 IV.
 

 Under M.R.Civ.P. 56(c), summary judgment will be granted to either the moving or non-moving party only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. In the present appeal, we determine there was no genuine issue of material fact. We must affirm, therefore, the grant of summary judgment unless the presiding justice committed an error of law. M.R.Civ.P. 56(c);
 
 Camplin v. Town of York,
 
 471 A.2d 1035, 1037 (Me.1984).
 

 The trial court found that certain allegations in the complaint were covered by the collective bargaining agreement and that, therefore, plaintiff had to exhaust his remedies under the grievance procedures set forth in the agreement before he could resort to the courts. The court relied on the principle enunciated in
 
 Republic Steel Corp. v. Maddox,
 
 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) that in cases where federal law applies, the employee has to exhaust his work grievances through the grievance and arbitration provisions of the collective bargaining agreement before he can resort to the courts. The court here erred in its ruling because the collective bargaining agreement specifi
 
 *1365
 
 cally excluded from both grievance and arbitration, claims made under the company’s insurance plans.
 
 [2]
 
 Hence, insofar as his company insurance claims were concerned, Procise had no grievance procedures to exhaust and could, therefore, resort to the courts for any alleged redress.
 

 Since we find part of the trial court’s decision erroneous, we must determine whether the grant of the summary judgment motion was appropriate on other grounds. Notwithstanding this error, we will uphold the lower court’s decision if the determination is in fact the right result.
 
 See Baybutt Construction Corp. v. Commercial Union Insurance,
 
 455 A.2d 914, 917 (Me.1983);
 
 Allstate Ins. Co. v. Lyons,
 
 400 A.2d 349, 352 (Me.1979).
 

 A careful reading of the complaint reveals that all of Procise’s claims stem from the handling of his injury claim as a claim for disability unrelated to his employment rather than as a claim for worker’s compensation for a work related injury. Additionally, Procise admits in his brief before this Court that all of his claims arise under the Workers’ Compensation Act.
 

 On October 27, 1977, Procise filed a Petition for Award of Compensation with the Workers’ Compensation Commission. On April 11, 1980, the Commission approved a lump sum settlement between Procise and General Electric. Section 71 of 39 M.R.S.A. provided in 1980 that
 

 Such petition may be granted where it is shown to the satisfaction of the commission that the payment of a lump sum in lieu of future weekly payments, or
 
 as an agreed compromise settlement of a disputed claim,
 
 will be for the best interests of the person or persons receiving or claiming such compensation,_ (Emphasis added).
 

 Upon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of said injury or death and be entitled to a duly executed release; upon filing which, or other due proof of payment, the liability of such employer under any agreement, award or decree shall be discharged of record, and the employee accepting the Lump Sum Settlement shall receive no further compensation or other benefits on account of said injury.
 

 No evidence exists in the record to indicate that the settlement was not paid. Section 102 of the Workers’ Compensation Act details a specific procedure by which a compensation agreement may be set aside.
 
 [3]
 
 Such agreements remain valid and enforceable until set aside by this procedure.
 
 Cannon v. Folsom,
 
 401 A.2d 997, 999 (Me.1979). Additionally, section 28 of 39 M.R. S.A. states that “[a]n employee of an employer, who shall have secured the payment of compensation as provided in sections 21 to 27 shall be held to have waived his right
 
 *1366
 
 of action at common law to recover damages for the injuries sustained by him....” To the extent that any. of Procise’s claims against any of the defendants are included under this provision, Procise has waived his right to pursue any of these common law actions by accepting the Lump Sum Settlement.
 

 Since Procise had the opportunity to make these allegations before the Workers’ Compensation Commission, he should have made that showing before the Commission if these causes of action are covered under the Act.
 
 See Ragsdale v. Watson,
 
 201 F.Supp. 495 (W.D.Ark.1962). Pro-cise’s claims include bad faith, breach of statutory duties, interference with protected property interest, breach of fiduciary duty, severe emotional distress, and fraud and deceit. In ruling on a complaint alleging similar causes of action, a California Court of Appeals ruled that the trial court was correct in concluding that “the gravamen of the complaint is the failure of the plaintiff’s employer to pay him ... workers’ compensation benefits which were due .... such a failure is squarely cognizable by the WCAB (the California equivalent to the Maine Workers’ Compensation Commission).”
 
 Denning v. Esis Corp.,
 
 139 Cal. App.3d 946, 189 Cal.Rptr. 118, 119 (App.1983). We agree that, to the extent these parties are included within the immunity provisions of the Workers’ Compensation Act, Procise’s claims are barred by the settlement agreement and the Superior Court did not have jurisdiction to entertain those claims until the Lump Sum Settlement had been set aside by the Workers’ Compensation Commission. The Workers’ Compensation Act provides the exclusive procedure for review of any administrative decision in which the basic contention is that the plaintiff was wrongfully denied workers’ compensation benefits.
 
 See Sandoval v. Salt River Project,
 
 117 Ariz. 209, 571 P.2d 706, 711 (Ariz.App.1979).
 

 Having determined that all of Pro-cise’s claims assert common law causes of action within the meaning of the Workers’ Compensation Act, we must now determine which of these parties, if any, are discharged from liability for such causes of action under the provisions of § 28 of the Workers’ Compensation Act when Procise accepted the Lump Sum Settlement. Pro-cise makes claims against five parties: his employer, General Electric; his employer’s Workers’ Compensation insurance carrier, Electric Mutual; and three fellow employees, Carol Grindel, Richard Oxton, and William Ellinger. Section 71 of 39 M.R.S.A. specifically states that employers are discharged from all further liability under the Act arising from an injury once a settlement agreement has been approved and satisfied. Since Procise makes no claim that payment has not been made on the settlement, any liability General Electric may have arising out of the intervening torts of its employees are discharged by the Lump Sum Settlement.
 
 See Steeves v. Irwin,
 
 233 A.2d 126 (Me.1967).
 

 Employer is defined by 39 M.R. S.A. § 2(6) (1978) to include the employer’s insurer “unless the contrary intent is apparent from the context or it is inconsistent with the purposes of this Act”. We find that no such contrary intent or inconsistent purposes exist in this case. This case can be distinguished from other cases that have held the insurance carrier independently liable for failing to pay benefits. Those cases arose not out of the original employment relationship but rather out of the relationship between the insurance carrier and the employee after “the basic remedies as an injured employee had been settled through procedures provided by the Act.”
 
 Gibson v. National Ben Franklin Insurance Company,
 
 387 A.2d 220, 222 (Me.1978). In that case this Court cited with approval the line of cases suggesting that “it is correct to treat a claimant who has acquired remedial rights under a compensation act as having a status different from that of an employee who has not acquired
 
 *1367
 
 such rights, with the result that the immunity from suit normally afforded the carrier by employment compensation acts is not available.”
 
 Id.
 
 The allegations made by Procise do not involve the relationship between Electric Mutual and him after his basic remedies as an employee have been settled but instead involve the handling of Procise’s initial benefit claims. We, therefore, find that Electric Mutual is within the definition of employer and any claims against it are barred by the settlement agreement.
 

 Finally, Procise makes a number of allegations against three employees of General Electric regarding their direction of his benefit claim from a workers’ compensation claim to a non-work related benefit claim. This Court has specifically dealt with the issue of whether co-employee claims are included in the immunity provisions of 39 M.R.S.A. § 4 (1978). That section was amended in 1979 to include co-employees; however, this cause of action accrued in 1976 and 1977 and therefore is not covered by this amendment. In
 
 McKellar v. Clark Equipment Co.,
 
 472 A.2d 411, 415-416 (Me.1984), we concluded that causes of action against co-employees are not included in the immunity provisions of section 4 for all actions that arose before the effective date of the amendment, September 14, 1979. Other jurisdictions have concluded and, we agree, that where employees are acting in their official capacity with respect to a non-delegable duty of the employer, they stand in the shoes of the employer and share in the employers’ immunity.
 
 See Athas v. Hill,
 
 458 A.2d 859, 867 (Md.1983). We conclude that the duty to provide and administer workers’ compensation and other benefits is such a non-dele-gable duty. The Workers’ Compensation Act specifically states that the employer is subject to the Act and must secure payment of compensation in conformity with the Act. 39 M.R.S.A. § 21 (1978). The Act does not state any requirements that co-employees must fulfill regarding the payment of benefits. In such case, the duty owed by the co-employee is to the employer and not to the employee.
 
 See Clark v. Better Construction Co.,
 
 420 So.2d 929, 931 (Fla.App.1982). In order to sustain an action against a co-employee, an employee must allege in his complaint that the co-employee breached a duty owed to the co-employee, not to the employer.
 
 See Crawford v. Dickman,
 
 240 N.W.2d 165, 167 (Wis.1967). In this case, we cannot find that Procise made any such allegation. In fact, he makes the same allegations against the employer as against the employees. Since Procise has made no allegation under which any of the co-employees could have owed any duty to him, the claims against the employees are barred by the settlement agreement. We conclude that, because all defendants in this action are immune from suit under the Workers’ Compensation Act, the trial court did not err in finding that plaintiff was not entitled to recover on any of his asserted claims.
 

 For the reasons stated above, the entry is:
 

 Judgment affirmed.
 

 All concurring.
 

 [1]
 

 . M.R.Civ.P. 56 states, in pertinent part:
 

 (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party.
 

 (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 

 (f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 

 [2]
 

 . The collective bargaining agreement provided in pertinent part:
 

 ARTICLE VI — Special Payments:
 

 Section 7 — Sick Pay
 

 1. An hourly employee with one or more years of continuous service, absent because of (a) personal business, ... (c)
 
 personal illness for which weekly disability benefits are not payable under the General Electric Insurance Plan
 
 or under Workmen’s Compensation, will with the manager’s approval, receive sick pay_ (Emphasis added).
 

 ARTICLE XVII — Arbitration:
 

 4. (a) ....
 

 4. (b)
 
 In addition, notwithstanding any contrary provision of this Article, (i) no provision of this Agreement or other agreements between the parties shall be subject to arbitration pertaining in any way to the establishment, administration, interpretation or application of Insurance or Pension Platts or other benefit plans in which employees covered by this Agreement are eligible to participate.
 
 (Emphasis added).
 

 [3]
 

 . 39 M.R.S.A. § 102 (1978) states, in pertinent part:
 

 Upon the petition of either party at any time the commission may annul any agreement which has been approved by the commission provided it finds that such agreement was entered into through mistake of fact by said petitioner or through fraud.