1998 ME 158

**Aurel LAVOIE, et al.,**

v.

**Rainald GERVAIS, Sr., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 8, 1998.

Decided June 30, 1998.

Mary Margaret Parker, Island Falls, for plaintiffs.

Frank H. Bishop, Stevens, Engels & Bishop, Presque Isle, for Rainald A. Gervais, Sr.

Francis E. Bemis, Hardings Law Offices, Presque Isle, for Rainald Gervais, Inc.

Eugene J. McLaughlin, Jr., Presque Isle, for Gervais Farms, Inc.

David C. King, Barbara A. Cardone, Rudman & Winchell, Bangor, for American Fidelity & MGA Ins. Co.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, DANA, LIPEZ, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] Aurel Lavoie[1] and Edwina Lavoie appeal from the judgment of the Superior Court (Aroostook County, *Marden, J.*) granting a motion for a summary judgment and/or a motion to dismiss in favor of Rainald Ger-

---

1. Aurel Lavoie died December 16, 1997, and his death has been suggested on the record. As of the date of this opinion, no motion for substitu-

tion pursuant to 18–A M.R.S.A. § 3–817 (1998) and M.R.Civ.P. 25 has been made.

vais, Sr.; motions for a summary judgment in favor of Rainald Gervais, Inc., and Gervais Farms, Inc.;[2] and a motion to dismiss in favor of American Fidelity Insurance Company/MGA Insurance Services.[3] The Lavoies contend that the court erred by finding that their claims of fraud fail because Aurel had not exhausted his administrative remedies; that the court erred by applying an incorrect legal standard to the dispositive motions of Gervais, Rainald Gervais, Inc., and American Fidelity/MGA; and that the court erred by not specially assigning the case. Because we find that the Superior Court did not have subject matter jurisdiction of the Lavoies' claim based on fraud in the workers' compensation proceedings, we vacate the judgment and remand for dismissal of the complaint.

[¶2] Aurel suffered a work-related injury in October 1989. He did not know, and indeed it was unclear, whether his employer at that time was Gervais, Rainald Gervais, Inc., or Gervais Farms, Inc. He filed a workers' compensation claim in December 1989 naming Gervais Farms, Inc., as his employer. Following a complicated and drawn-out series of proceedings over the course of two years, the commission issued a decision in June 1992. The commission found that at the time of the injury Aurel had been employee of Gervais personally, and that Gervais was exempt from providing workers' compensation coverage because he had fewer than six full-time employees. See 39–A M.R.S.A. § 401(1)(C) (Supp.1997) (replacing 39 M.R.S.A. § 21–A(1)(C) (1989)). Consequently, Aurel was denied any recovery under the Workers' Compensation Act.

[¶3] Aurel filed a motion with the Workers' Compensation Board in January 1993 requesting that the decision be set aside, alleging that Gervais, Rainald Gervais, Inc., Gervais Farms, Inc., their attorneys, and their insurers had perpetrated fraud during the workers' compensation proceedings. Shortly thereafter, however, Aurel withdrew

his motion, apparently in the belief that the Board did not have jurisdiction to hear it.

[¶4] While the workers' compensation claim was pending, in February 1990 the Lavoies filed a civil claim for negligence against Gervais and Rainald Gervais, Inc. For the purposes of that litigation, the parties stipulated that Gervais was Aurel's employer at the time of the accident. Following a jury trial, judgment was entered in April 1994 in the Lavoies' favor in the amount of $30,000.

[¶5] In September 1993, prior to the entry of judgment in the civil complaint, the Lavoies filed the instant action. They claimed that Gervais, Rainald Gervais, Inc., Gervais Farms, Inc., American Fidelity/MGA, and five other parties (including an insurer, an insurance agency, and attorneys for some of the defendants[4]) conspired to deny Aurel recovery under the Workers' Compensation Act and to deny the Lavoies recovery through the negligence action. Pointing to the representations made by the defendants during the course of the workers' compensation proceedings and the then-ongoing negligence action, the Lavoies contended that the parties had colluded to obscure the identity of Aurel's employer, thus limiting their ability to recover for his injury.

[¶6] The complaint consisted of six counts. Count I, tortious deprivation of Aurel's rights under the Workers' Compensation Act, and Count II, tortious deprivation of the Lavoies' rights in the negligence proceeding, were pleaded in the alternative because the negligence claim had not been decided when the Lavoies filed the complaint. The remaining counts referred to both the workers' compensation and the negligence proceedings: Count III alleged a violation of the Maine Civil Rights Act; Count IV alleged abuse of process; Count V alleged tortious breach of contract and interference with contractual relations; and Count VI al-

2. While this action was pending, Rainald Gervais, Inc., changed its name to Gervais Sound Center, Inc. We will refer to its original name, Rainald Gervais, Inc.

3. American Fidelity Insurance Company provided workers' compensation coverage to Gervais

Farms, Inc., and Rainald Gervais, Inc. MGA acts as a local agent for American Fidelity.

4. The motions for a summary judgment by these parties were granted by the court. The Lavoies have not challenged this aspect of the judgment.

leged negligent and/or intentional infliction of emotional distress.

[¶ 7] The Lavoies' complaint, in 88 numbered paragraphs, laid out the factual underpinnings of all six counts in a section entitled "Facts Demonstrating a Pattern of Fraud, Deceit and Misrepresentations." In particular, the Lavoies chronicled the alleged inconsistencies in the representations made by the defendants and their representatives during the course of the proceedings before the board and the court. Each count in turn was premised on and referred specifically to this alleged pattern of fraud.

[¶ 8] With respect to Count II (tortious deprivation of the Lavoies' rights in the negligence proceeding), the court, ruling on the dispositive motions of Gervais, Rainald Gervais, Inc., Gervais Farms, Inc., and American Fidelity/MGA, took judicial notice of the negligence judgment. Because the Lavoies had been awarded $30,000, the court found that they were not prejudiced in the negligence action and that Count II was moot. The Lavoies do not challenge this finding on appeal.

[¶ 9] The Lavoies stipulated that Gervais was Aurel's employer, they prevailed, and they did not appeal the judgment in the earlier negligence action. The Lavoies may not now bring a collateral action claiming that they somehow were harmed during the course of that proceeding. *See Warren v. Waterville Urban Renewal Auth.,* 235 A.2d 295, 299 (Me.1967), *cert. denied,* 390 U.S. 1006, 88 S.Ct. 1249, 20 L.Ed.2d 105 (1968) ("A party cannot claim aggrievement from trial conduct which he actively seconded or tacitly tolerated."). Apparently, the Lavoies, having acquiesced in the court's ruling with respect to Count II in the present action, concede this point. Thus we are left with Counts I, III, IV, V, and VI to the extent that each alleges some harm arising out of the workers' compensation proceedings. The Lavoies may, of course, use the evidence discovered during the course of the negligence proceeding to support the contention that Aurel suffered harm during the workers' compensation proceeding.

[¶ 10] Count I (tortious deprivation of rights under the Workers' Compensation Act), Count III (violation of the Maine Civil Rights Act), Count IV (abuse of process), Count V (tortious breach of contract and interference with contractual relations), and Count VI (negligent and/or intentional infliction of emotional distress) share a logically necessary precursor. All of these counts, as pleaded by the Lavoies, are dependent on a finding that the defendants engaged in fraud during the workers' compensation proceedings. Absent a finding of fraud, all of the counts by necessity must fail. Thus we address first the question whether fraud perpetrated in the course of a workers' compensation proceeding is a proper subject for an action in the Superior Court.

[¶ 11] We have previously held that "the rights of a party under the Workers' Compensation Act are purely statutory." *Guaranty Fund Mgmt. Servs. v. Workers' Compensation Board,* 678 A.2d 578, 583 (Me. 1996) (citations omitted). The Act does not provide for review in the Superior Court of a board decision on the basis of alleged fraud. Rather, pursuant to 39–A M.R.S.A. § 321 (Supp.1997), a party may petition the board to reopen any case "in which fraud on the part of the opposing party is alleged." [5] The Workers' Compensation Act creates the exclusive remedy for an employee alleging fraud in the course of a workers' compensation proceeding. *See Procise v. Electric Mut. Liability Ins. Co.,* 494 A.2d 1375, 1382

---

5. 39–A M.R.S.A. § 321 (Supp.1997) provides in part:

A party may petition the board, within one year of initiation of a payment scheme, award or decree, to reopen any case in which fraud on the part of the opposing party is alleged. If the board finds that the petitioning party exercised due diligence in investigating the initial claim and further finds that fraud occurred, the board may reopen the case as to any issue that may have been affected by the fraudulent act and the board may terminate or modify an employer's obligation to make payment upon a finding that fraud on the part of a party affected the employer's obligation to make payment.

Except in the case of fraud on the part of the employee, an employee is not barred by any time limit from filing a petition to have any issues determined in accordance with this Act as though the payment scheme had not been initiated.

(Me.1985); 39–A M.R.S.A. §§ 104, 408 (Supp. 1997).[6] Therefore, the Superior Court was without subject matter jurisdiction to hear these causes of action founded on the alleged fraud of the defendants.

[¶ 12] We need to address an earlier ruling, which the Lavoies apparently found confusing. In *Baker v. Klein*, 655 A.2d 367, 368 (Me.1995), the Workers' Compensation Commission (predecessor to the Workers' Compensation Board) terminated Baker's workers' compensation benefits, and Baker sought review of that decision, unsuccessfully, with the Appellate Division of the commission, the Law Court, and the Supreme Court of the United States. Baker then filed a separate action in the Superior Court alleging fraud by the insurer and its expert, which the court dismissed for failure to exhaust administrative remedies. *Id.* Affirming the judgment, we stated: "By filing a civil complaint in the Superior Court alleging that fraud caused the Commission's denial of his benefits, Baker has failed to use the administrative procedure set forth in [section 321 of] the Act. This failure to exhaust his administrative remedy required dismissal of his action." *Id.* at 368–69 (citing *Procise*, 494 A.2d at 1381). That holding is correct insofar as it directs the claimant to first seek review of his claim of fraud with the board, in conformance with the provisions of the Act. It is misleading, however, to the extent it implies that an allegation of fraud in the context of a workers' compensation proceeding would ever be heard by the Superior Court. The Act simply provides no mechanism for review in that court of allegations of fraud in a workers' compensation proceeding. *But see Hanover Ins. Co. v. Workers' Compensation Board*,

1997 ME 104, 695 A.2d 556 (review in the Superior Court pursuant to the Maine Administrative Procedures Act will lie with respect to assessment determinations made by the full Board acting as an administrative body, as opposed to determinations traditionally delegated to individual hearing officers, which are not subject to review in that court).

[¶ 13] As we stated in *Procise*, interpreting the statutory precursor to section 321, i.e., 39 M.R.S.A. § 102 (1978),[7] "The Workers' Compensation Act provides the exclusive procedure for review of any administrative decision in which the basic contention is that the plaintiff was wrongfully denied workers' compensation benefits." *Procise v. Electric Mut. Liability Ins. Co.*, 494 A.2d at 1382 (citation omitted). Plainly, all of the Lavoies' claims rest on the "basic contention" that Aurel was wrongfully denied his workers' compensation benefits. That contention must first be addressed by a hearing officer and, if appropriate, reviewed by the board, and finally, appealed to us. The Superior Court simply has no role in reviewing claims of fraud in the context of workers' compensation proceedings.

The entry is:

Judgment vacated. Remanded with instruction to dismiss the complaint.

---

6. 39–A M.R.S.A. § 104 (Supp.1997) provides in part:

An employer who has secured the payment of compensation in conformity with sections 401 to 407 is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18–A, section 2–804, involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries.

39–A M.R.S.A. § 408 (Supp.1997) provides in part:

Except as provided in subsection 2, an employee of an employer who has secured the

payment of compensation as provided in sections 401 to 407 is deemed to have waived the employee's right of action at common law and under section 104 to recover damages for the injuries sustained by the employee.

7. 39 M.R.S.A. § 102 (1978) provided in relevant part: "Upon the petition of either party at any time the commission may annul any agreement which has been approved by the commission provided it finds that such agreement was entered through mistake of fact by said petitioner or through fraud."