STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-270

TDW-CUM - 4/4/2000

KARL HAWKES,

Plaintiff

v.

PRIVATE INVESTIGATION SERVICES
OF MAINE AND NEW ENGLAND, INC.;
STEVE HANDCOCK; and COMMERCIAL
UNION INSURANCE CO.,

Defendants

ORDER ON MOTION FOR
SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

APR 10 2000

This action arises out of certain alleged actions performed in 1992 by a private investigator engaged in the surveillance of Karl Hawkes on behalf of Hawkes's workers compensation insurer. At the time in question Hawkes was receiving weekly workers compensation benefits based upon a workplace injury that had occurred in 1984.

Hawkes alleges that the private investigator twice gained access to his home under false pretenses and without identifying himself. He is suing the investigator, the company for whom the investigator works, and the workers compensation insurer for whom the surveillance was undertaken on claims of invasion of privacy, trespass, intentional infliction of emotional distress and negligent infliction of emotional distress. Hawkes has also asserted a claim against the workers compensation insurer, Commercial Union Insurance, for breach of duty of good faith and fair dealing.

Before the court is Commercial Union's motion for summary judgment. Commercial Union alleges two major arguments -- that the claims against it are barred by the exclusivity provisions of the Workers Compensation Act, 39-A M.R.S.A. §§104 and 408, and that the claims are barred by a release executed by Hawkes on June 25, 1997 when he reached a lump sum settlement of his workers compensation claim after he had become aware of the surveillance activities of which he now complains. Commercial Union also contends, in the alternative, that it is entitled to judgment as a matter of law on all of the individual causes of action asserted against it by Hawkes.

For purposes of the instant motion for summary judgment, the court will consider only those portions of the record identified in the Rule 7(d) statements submitted by the parties and shall accept plaintiff's version of the facts on all issues on which there is any divergence between the versions of the facts offered by the parties. See Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶16, 711 A.2d 1306, 1310; Harkness v. Fitzgerald, 1997 ME 207, ¶5, 701 A.2d 370, 372.[1]

1.      Exclusivity of Workers Compensation Remedy

Under 39-A M.R.S.A. §104 (Pamph. 1999), an employer who has obtained workers compensation coverage is exempt from civil actions involving personal injuries sustained by an employee "arising out of and in the course of employment". For purposes of Maine's Workers Compensation Law, the term

---

[1]      As part of his opposition to Commercial Union's motion for summary judgment, Hawkes filed a request for additional discovery pursuant to Rule 56(f) but advised the court at the hearing on Commercial Union's motion that, as far as the pending motion for summary judgment was concerned, his request for additional discovery was no longer an issue.

"employer" includes an employer's insurer unless a contrary intent is apparent from the context or is inconsistent with the purposes of the Act. 39-A M.R.S.A. §102(12) (Pamph. 1999).

The first question is whether Commercial Union qualifies as an employer for purposes of the statute. Under Mills v. Travelers Insurance Co., 567 A.2d 446, 448 (Me. 1989), where the activities engaged in by an insurer are integral to its functions as a workers compensation carrier, the insurer shall be entitled to the same immunity as the employer. In this case Commercial Union argues that investigating workers compensation claims is an integral part of its functions as an insurer and that it is entirely permissible for such investigation to include surveillance. See, e.g., McLain v. Boise Cascade Corp., 533 P.2d 343, 346 (Or.1975). Hawkes did not dispute this proposition at the hearing on Commercial Union's motion.

Hawkes argues, however, that if it is proven that Commercial Union was responsible for actions of the private investigator that went beyond mere surveillance and constituted independently actionable torts, it has stepped outside of its role as an insurer and forfeited the immunity it would otherwise have had under 39-A M.R.S.A. § 104. This argument is consistent with the analysis employed by the First Circuit in Breton v. Travelers Insurance Co., 147 F.3d 58, 64 (1st Cir. 1998), citing Unruh v. Truck Insurance Exchange, 498 P.2d 1063 (Cal. 1972). Under Breton, it would appear that there are disputed issues of fact precluding a finding

3

that Commercial Union is entitled to invoke the exclusive remedy provision in this case.

The court is not entirely convinced this is the proper way to analyze the issue. A rule that an insurer is only immune so long as it does not engage in any tortious activity is the same as a ruling that no immunity is available. While Commercial Union might be found to have stepped outside of its role as a workers compensation carrier if it engaged in actions that were not related to its function of investigating Hawkes's claim, its alleged actions in this case (even if wrongful) appear to have been part of its function of investigating Hawkes's workers compensation claim.[2]

Even assuming, however, that Commercial Union did not step outside of its role, this does not resolve whether the exclusive remedy provision is applicable. That depends on whether the injuries in this case arose "out of and in the course of employment" within the meaning of 39-A M.R.S.A. §104. In a series of cases the Law Court has suggested that the ultimate question on this issue is whether an injury is sufficiently work-related to come within the exclusivity provision. See Knox v. Combined Insurance Co., 542 A.2d 363, 366 (Me. 1988); Comeau v. Maine Coastal Services, 449 A.2d 362, 365-66 (Me. 1982).[3]

---

[2] For purposes of summary judgment, the court assumes that Commercial Union can be held liable for the actions of the private investigator but that issue obviously remains open for trial.

[3] Sometimes that inquiry necessitates subsidiary inquiries into such questions as whether an injury occurred on or off the employer's premises, see Hebert v. Intl. Paper Co., 638 A.2d 1161, 1162 (Me. 1994); Comeau, 449 A.2d at 367, but those inquiries are not necessarily dispositive. The "crucial question" is whether a sufficient work connection has been shown. Comeau, 449 A.2d at 367.

In this case the injury inflicted by the alleged actions of the private investigator was not work-related within the normal meaning of that term. Hawkes had been out of work on workers compensation for approximately eight years when the alleged injury was inflicted. If Commercial Union is to benefit from the exclusivity provision in this case, therefore, the words "arising out of and in the course of employment" in 39-A M.R.S.A. §104 must be interpreted to include matters arising out of and in the course of the handling of a workers compensation claim. There is some support for this position. The Law Court has found that workers compensation is the exclusive remedy in at least two cases where the alleged injury included mental distress inflicted in the course of the handling of the claim. Lavoie v. Gervais, 1998 ME 158, ¶11, 713 A.2d 335, 337-38; Procise v. Electric Mutual Liability Ins. Co., 494 A.2d 1375, 1382 (Me. 1985).[4] In both those cases, however, the gravamen of the complaint was an alleged failure by the employer or its insurer to pay an employee the workers compensation benefits which were due, as a result of either alleged fraud or wilful delay, and the Law Court found that the workers compensation process provided the exclusive remedy for these claims. See Lavoie, 1998 ME 158, ¶13, 713 A.2d at 338 (basic contention of employee was that workers compensation benefits were wrongfully denied); Procise, 494 A.2d at 1382

---

[4]Procise distinguished a prior decision in which the Law Court had allowed suit against a workers compensation insurer for refusing to make prompt payment of benefits. Gibson v. Natl. Ben Franklin Ins. Co., 387 A.2d 220 (Me. 1978). The ground on which Procise distinguished Gibson was that in Gibson there had been a settlement so that the case no longer arose out of the original employment relationship. See 494 A.2d at 1382-83. In analyzing these decisions the court has some doubt that Gibson has in fact survived Procise and Lavoie, especially as in Gibson there had been no final settlement and the employee's claim was that the insurer was delaying or withholding payment in order to coerce her to enter a final settlement. See 387 A.2d at 222.

(citing Denning v. Esis Corp., 189 Cal. Rptr. 118 (Cal.App. 1983), for proposition that gravamen of complaint was failure of employer to pay).

In this case Hawkes's basic contention is not that his workers compensation benefits were wrongfully withheld but that his privacy was wrongfully invaded. The Law Court has not held that all causes of action that arise out of the claims handling process are barred by the exclusive remedy provision. In Lavoie and Procise it barred claims for emotional distress allegedly inflicted during the claims handling process but only where the underlying issue was a failure to pay benefits. The court concludes that under the existing Law Court cases there is still room for employees to pursue independent torts where the underlying issue is not based on a failure to pay benefits.[5]

In sum, whether the claims alleged here are analyzed in terms of the insurer's having stepped out of its appropriate role under Breton or whether they are analyzed in terms of whether the claims arose in the course of employment, the court concludes that summary judgment cannot be granted to Commercial Union on the ground that Hawkes's claims against Commercial Union in this action are barred by the exclusive remedy provision.

---

[5]     Commercial Union argues that the Workers Compensation Law permits penalties to be imposed for "questionable claims handling techniques", 39-A M.R.S.A. §359(2) (Pamph. 1999), and that such penalties should be found to be the exclusive remedy for the alleged injuries suffered by Hawkes in this case. The court is not persuaded that the existence of penalties for "questionable claims-handling techniques" constitutes a legislative decision to supplant common law remedies for independent torts, not stemming from wrongful denial of benefits, committed during the workers compensation process. It is also not clear that the statutory term "questionable claims-handling practices" includes the kind of activity alleged by Hawkes in this case.

## 2.  Release

Commercial Union also contends that Hawkes's claims against it are barred by a release that Hawkes executed in 1995, three years after the alleged intrusions into Hawkes's home by the private investigator.  The language of the release signed by Hawkes covers

> all claims under Title 39 M.R.S.A., under the Workers' Compensation Act or under 5 M.R.S.A. Section 4551 et seq., the Maine Human Rights Act, or under any other state or federal or local law relating to employment or discrimination which I now have or which may hereafter accrue, on account of all injuries, personal or otherwise, resulting from my employment with Giberson Buick at any time, including, but not limited to, any claims resulting from an injury on or about April 16, 1984 or any other gradual or specific injury date on which my employer was insured by Commercial Union Insurance Company and including any occupational disease, aggravation of any pre-existing condition or combination of injuries, any claim for wrongful discharge, discipline or discrimination, and including any claim by dependents of the above-named employee.

In capital letters at the bottom, the release further recited

> This is a final release and settlement of all claims under Title 39 M.R.S.A. under the Maine Workers Compensation Act, or under Titles 5 M.R.S.A. or the Maine Human Rights Act.

By its terms this release does not appear to cover common law claims.  Instead it only covers claims under the workers compensation law and under any state or Federal employment statute.  Commercial Union points out that Hawkes used far broader language in an affidavit he submitted to the Workers Compensation Commission seeking approval of the lump sum settlement ("My

7

attorney has advised me, and I otherwise fully understand, that upon approval of my lump sum petition by the Workers Compensation Commission, I will no longer be able to make any claim against my employer, Giberson Buick, or against the insurance company, Commercial Union Insurance Company"). It is undisputed that Hawkes was aware of the activities of the private investigator of which he now complains at the time he signed the release and executed the affidavit.

If the release were worded as broadly as the affidavit, Commercial Union would be entitled to summary judgment. Nevertheless, the court must presume that the document that was primarily bargained for by Commercial Union was the release, and the release does not unambiguously cover the common law claims asserted by Hawkes in this action. The combined effect of the release and the affidavit, together with any understandings that Commercial Union and Hawkes may have had at the time of the lump sum settlement, may raise issues that need to be resolved at trial, but Commercial Union is not entitled to summary judgment on this issue.

The court will therefore address Commercial Union's individual challenges to the causes of action asserted by Hawkes.

3.     Invasion of Privacy

Hawkes's claim for invasion of privacy is based on an alleged intrusion upon the seclusion of another. This particular form of privacy claim is derived from Restatement (Second) of Torts, §652B, which provides as follows:

> One who intentionally intrudes, physically or otherwise,
> upon the solitude or seclusion of another or his private

affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The comments to this section of the Restatement demonstrate that liability may be based upon this section even for behavior that, because it is secretive, is not perceived as intrusive at the time (e.g., looking through a person's window with a telescope). See id., comment b. Although Commercial Union argues that the intrusion in this case is not one that would be highly offensive to a reasonable person, based on Hawkes's admission that he knew he could be subjected to surveillance as a workers compensation claimant, that does not mean Hawkes expected or was willing to put up with the particular form of surveillance in question here which involved an alleged intrusion into his house under false pretenses. There is a disputed issue for trial as to whether the actions alleged here would have been "highly offensive to a reasonable person". Summary judgment on the invasion of privacy claim contained in count I of the complaint is denied.

4.    Trespass

Summary judgment on Hawkes's claim of trespass is also denied. The complaint alleges two unauthorized entries into plaintiff's residence. Consent for those entries was allegedly obtained by misrepresenting the identity of the visitor and the purpose of the entry. This constitutes a claim for trespass even under the Seventh Circuit case cited by Commercial Union. See J.H. Desnick M.D. v. American Broadcasting Co., Inc., 44 F.3d 1345, 1351-52 (7th Cir. 1994), in which Judge Posner ruled that journalists who entered a doctor's offices under false pretenses

9

were not liable for trespass but suggested a different result would obtain if someone impersonated a meter reader to gain access to someone's personal residence. This is akin to the phony meter reader situation.

5.      Breach of Duty of Good Faith and Fair Dealing

Commercial Union argues that Hawkes's claim for breach of the insurer's duty of good faith and fair dealing is a cause of action that has been rejected by the Law Court. See Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 652 (Me. 1993). In opposing the motion, Hawkes acknowledges this point, and it appears that this cause of action was primarily included in an effort to persuade the Law Court to change its mind. This court is bound by the Law Court's current jurisprudence on the subject and Count III of Hawkes's complaint is therefore dismissed.

6.      Intentional Infliction of Emotional Distress

Commercial Union argues that Hawkes's intentional infliction of emotional distress claim does not allege conduct that is so extreme and outrageous as to exceed all possible bounds of decency and that would be regarded as atrocious and utterly intolerable in a civilized community. The court concludes, however, that there is a triable issue of fact on this issue. Similarly, while Commercial Union argues that the distress experienced by Hawkes was not sufficiently severe to allow recovery on this theory, there are disputed facts on this issue. This arises from evidence that can be interpreted to support the claim that Hawkes developed a delusional disorder triggered by the surveillance and that this worsened after he settled his workers compensation claim. Indeed, there is evidence that Hawkes believed that he was

10

still under surveillance after he had finally settled his claim. Summary judgment is denied as to count IV of the complaint.

7.  Negligent Infliction of Emotional Distress

The court is not sure it has to rule on Commercial Union's challenge to this claim to the extent that emotional distress is also a component of the damages sought under other claims. Considering Hawkes's negligent infliction of emotional distress claim as a free standing cause of action, however, the court is inclined to agree with Commercial Union that Hawkes may not use a negligent infliction of emotional distress claim "to circumvent other requirements of the law of torts". Devine v. Roche Biomedical Laboratories, Inc., 637 A.2d 441, 447 (Me. 1994). The gravamen of the complaint in this case is that an investigator acting on Commercial Union's behalf invaded Hawkes's residence under false pretenses. If Hawkes cannot prevail on his other theories, he should not be able to recover on a negligent infliction theory. This is particularly true since the court does not conclude that Commercial Union owed Hawkes a duty of care and can see no reason why a negligent infliction theory would not allow any workers compensation claimant subjected to surveillance (even the kind of surveillance that plaintiff concedes is permissible) to seek recovery if that surveillance happened to cause severe emotional distress because the claimant was particularly susceptible to such distress. Summary judgment is granted as to count V of the complaint.

The clerk is directed to incorporate this order by reference in the docket pursuant to Rule 79(a).

11

Dated: _April 3_, 2000

Thomas D. Warren
Justice, Superior Court