2001 ME 8

**Karl HAWKES**

v.

**COMMERCIAL UNION INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 2000.

Decided Jan. 16, 2001.

James M. Fongemie, Ralph L. Tucker, McTeague, Higbee, Case, Cohen, Whiteny & Toker, P.A., Topsham, for plaintiff.

Mark G. Lavoie, Christopher C. Taintor, Aaron K. Baltes, Norman, Hanson & DeTroy, LLC, Portland, for Commercial Union.

James W. Strong, Thomaston, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Commercial Union Insurance Company appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) denying its motion for summary judgment. Commercial Union argues that Karl Hawkes' claims are barred by the immunity and exclusivity provisions of the Workers' Compensation Act, 39–A M.R.S.A. §§ 104, 408 (Pamph.2000), or, alternatively, by settlement documents. We agree with the Superior Court that the Workers' Compensation Act does not foreclose Hawkes' tort claims against Commercial Union. We also affirm that portion of the Superior Court's order denying summary judgment on the basis of the settlement documents, because we agree that the three documents, read together, are ambiguous.

[¶ 2] Hawkes brought this action against Commercial Union, Private Investigation Services of Maine and New England, Inc., (PIS), and Steven Handcock. Commercial Union was the workers' compensation insurer for Hawkes' former employer, Giberson Buick–Pontiac. Hawkes suffered a workplace injury to his back on April 16, 1984, and Commercial Union paid weekly workers' compensation benefits to Hawkes from 1984 until 1996. In 1997 Hawkes settled his workers' compensation claim against Commercial Union and Giberson Buick–Pontiac and received a lump sum payment.

[¶ 3] In 1992, while Hawkes was receiving weekly workers' compensation benefits, Commercial Union hired PIS to investigate Hawkes' continuing incapacity. Steven Handcock was a private investigator assigned by PIS to investigate Hawkes. Handcock visited Hawkes' home under false pretenses on two occasions in 1992. During the first visit, Handcock said he was building a house and was interested in the layout of Hawkes' home. Hawkes gave Handcock a tour of the house, and Handcock asked if he could return at a later date and bring his wife. Handcock returned later with a woman. Hawkes invited the couple into his house and showed them receipts from contractors who had worked on his house. Handcock learned that Hawkes had hired contractors to construct his home, but had planted some trees and bushes on his own. In May 1993, Handcock observed and

videotaped Hawkes painting, shoveling manure, and mowing his lawn with a riding lawnmower. Hawkes did not learn that he had been under investigation until 1994 when Commercial Union sent surveillance photos and documents to his attorney prior to a workers' compensation hearing. Hawkes alleges that he continues to be stalked by Commercial Union and that the surveillance activities caused him to suffer from various symptoms and from a delusional disorder which significantly impairs his enjoyment of life.

[¶ 4] On June 5, 1997, Hawkes signed a lump sum settlement document, a release and resignation document, and an affidavit regarding the settlement. The lump sum settlement document, referring to the April 1984 back injury, states in pertinent part:

> When I receive the amount shown above and this settlement is approved by the hearing officer, I release the employer and insurer named above from all further liability for this injury.

The release and resignation document provides in relevant part:

> I, Karl Hawkes, for the sole consideration of $179,000.00 ... release and forever discharge ... [Commercial Union] ... from all claims ... under the Workers' Compensation Act ... which I now have or which may hereafter accrue, on account of all injuries, personal or otherwise, resulting from my employment with Giberson Buick at any time, including, but not limited to, any claims resulting from an injury on or about April 16, 1984, or any other gradual or specific injury date on which my employer was insured by [Commercial Union]....

1. Hawkes brought a five-count complaint against PIS, Handcock, and Commercial Union alleging that: (1) they intentionally intruded upon his privacy; (2) they intentionally and maliciously trespassed upon his property; (3) Commercial Union breached its duty to act in good faith with respect to the workers' compensation insurance contract between it and Giberson Buick–Pontiac; (4) they intentionally and recklessly caused him severe emotional distress; and

Hawkes' affidavit, consisting of twelve paragraphs, states that he makes the affidavit in support of his petition for the lump sum settlement and:

> I further understand that upon approval of this lump sum settlement, I will have no further right to make any claims for wage compensation, for medical or medically related expenses, for permanent impairment, for vocational rehabilitation, for discrimination, or any other claim under the Workers' Compensation Act.

Hawkes also states in his affidavit:

> I ... fully understand, that upon approval of my lump sum petition by the Workers' Compensation Commission, I will no longer be able to make any claim against ∴.. [Commercial Union].

Commercial Union promptly paid the settlement amount.

[¶ 5] Hawkes alleges that the three defendants intruded on his privacy, committed trespass, and intentionally inflicted emotional distress.[1] Commercial Union moved for summary judgment contending that it is immune from suit because of the exclusivity and immunity provisions of the Workers' Compensation Act. See 39-A M.R.S.A. §§ 104, 408. It also argued that it is entitled to summary judgment because Hawkes released it from all liability in the lump sum settlement. The Superior Court denied summary judgment determining that the Workers' Compensation Act does not bar Hawkes' claims against Commercial Union. The court also held that the three lump sum settlement documents are ambiguous and do not appear to cover common law claims. Commercial Union appeals from the denial of summary judgment.[2]

(5) they negligently caused severe emotional distress. The Superior Court granted summary judgment to Commercial Union on Counts 3 and 5 and, therefore, for this appeal we consider only the three remaining claims.

2. Neither PIS nor Handcock joined the summary judgment motion, and they did not file separate motions.

## I. APPLICABILITY OF FINAL JUDGMENT RULE TO WORKERS' COMPENSATION IMMUNITY AND EXCLUSIVITY DEFENSE

 [¶ 6] The first issue is whether Commercial Union may appeal from the denial of its summary judgment motion. We have held that the denial of an employer's motion for summary judgment, based on a claim of immunity pursuant to the exclusivity portion of the Workers' Compensation Act, is immediately reviewable. *See Hebert v. Int'l Paper Co.*, 638 A.2d 1161, 1162 (Me.1994). The immunity provision of the Workers' Compensation Act confers immunity from suit which "is effectively lost if a case is erroneously permitted to go to trial." *Smith v. Yankee Constr. Corp.*, 625 A.2d 904, 906 (Me. 1993) (citation and quotation omitted). Commercial Union is in the same position in this case as the employer was in the *Hebert* case, and we conclude that Commercial Union is entitled to appeal immediately from the denial of its summary judgment motion with regard to its claim of immunity and exclusivity pursuant to the Workers' Compensation Act.

## II. IMMUNITY AND EXCLUSIVITY PROVISIONS OF WORKERS' COMPENSATION ACT

[¶ 7] The immunity and exclusivity provisions of the Workers' Compensation Act generally provide that employers are exempt from civil actions for "personal injuries sustained by an employee arising out of and in the course of employment," 39–A M.R.S.A. § 104, and that employees who have secured compensation under the Act are deemed to have waived any common law action against the employer, 39–A M.R.S.A. § 408.[3] The former provision is considered to be the immunity provision, and the latter is the exclusivity provision. Because of the cross-reference in section 408 to section 104, the provisions are interrelated and, for the purposes of this case, coextensive. In the context of this case the term "employer" includes the insurer. *See* 39–A M.R.S.A. § 102(12) (Pamph.2000).[4]

 [¶ 8] When we examine whether the defense of immunity is available to an employer or an insurer, "we look to the gist of the action and the nature of the damages sought to determine whether the claim for injury is excluded" by the exclusivity provision. *Cole v. Chandler*, 2000 ME 104, ¶ 13, 752 A.2d 1189, 1196. Personal injuries that arise out of and in the course of employment are covered by the Workers' Compensation Act, and insurers are immune from liability for such injuries. *See id.* ¶ 9, 752 A.2d at 1195. To come within the coverage of the Act, an injury must be "sufficiently work-related, so it can be said to have been suffered both while and because the employee was at

---

**3.** Section 104 provides in part:

An employer who has secured the payment of compensation in conformity with sections 401 to 407 is exempt from civil actions ... at common law ... involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries.

Section 408 provides in part:

Except as provided in subsection 2, an employee of an employer who has secured the payment of compensation as provided in sections 401 to 407 is deemed to have waived the employee's right of action at common law and under section 104 to recover damages for the injuries sustained by the employee.

**4.** Section 102(12) provides: "If the employer is insured, 'employer' includes the insurer, ... unless the contrary intent is apparent from the context or is inconsistent with the purposes of this Act."

An insurer can lose its immunity by stepping outside its role as an insurer. *See Mills v. Travelers Ins. Co.*, 567 A.2d 446 (Me.1989). Although Hawkes argues that Commercial Union stepped outside of its insurer role by hiring an investigator who gained access to Hawkes' home under false pretenses, we do not address the argument because we do not find Hawkes' claims barred by the exclusivity and immunity provisions even assuming that Commercial Union was acting in the role of insurer and thus entitled to the same immunity as an employer.

work." *Knox v. Combined Ins. Co. of Am.*, 542 A.2d 363, 366 (Me.1988) (citation, quotation, and emphasis omitted).

## A. Nature of the Injury

[¶ 9] Because only personal injuries come within the Act, we first look to the nature of the injury suffered by Hawkes to determine if it is a personal injury. Following the trial court's decision on summary judgment, the claims remaining against Commercial Union are trespass to property, intrusion of privacy, and intentional infliction of emotional distress. The last claim is for a personal injury. In *Cole* we noted that we have previously held that mental injuries are personal injuries. *See Cole*, 2000 ME 104, ¶ 13, 752 A.2d at 1196.

[¶ 10] Trespass, however, is not a personal injury; rather, an action for trespass seeks recompense for damages to property. "Trespass protects possession of land." Jack H. Simmons, et al., Maine Tort Law 77 (1999). The Workers' Compensation Act is not applicable to Hawkes' trespass claim.

[¶ 11] Intrusion of privacy, a tort which we adopted in *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 794–95 (Me.1976), is a claim that is "broad enough to include recovery for economic injuries, as well as mental or physical injuries." *Cole*, 2000 ME 104, ¶ 13, 752 A.2d at 1196. Insofar as it covers economic injuries, intrusion of privacy is not a personal injury and not within the ambit of the Workers' Compensation Act. Because neither trespass nor economic injuries from intrusion of privacy are personal injuries, Hawkes' action for damages for these two torts is not barred by the exclusivity provision of the Workers' Compensation Act.

## B. Arising out of and in the Course of the Employment

[¶ 12] Next, we must address whether the claimed personal injury, that is, the intentional infliction of emotional distress as well as any personal injury

Hawkes claims from the intrusion of privacy, arose out of and in the course of his employment. The requirement that the personal injury arise out of *and* in the course of employment is in the conjunctive and, therefore, the personal injury must both arise "out of" *and* "in the course of." Considering first, the "arising out of" prong, we have said that "[a]n injury arises out of employment when, in some proximate way, it has its origin, its source, or its cause in the employment." *Li v. C.N. Brown Co.*, 645 A.2d 606, 609 n. 2 (Me.1994). "Arising out of employment" means that the injury must have a causal connection to the employment. *See Comeau v. Maine Coastal Servs.*, 449 A.2d 362, 365 (Me.1982). The only tie between Giberson Buick and these claims is that the alleged torts were committed by Giberson Buick's insurance carrier and arose from surveillance activities in which the insurer was attempting to determine if Hawkes was still incapacitated. Although the causal link is remote, we cannot say that the claims did not originate or have their source in Hawkes' employment. Therefore, the personal injury claims meet the "arising out of" prong.

[¶ 13] Going on to the final step in the analysis, we determine whether the personal injury claims arose in the course of Hawkes' employment. "Arising in the course of employment" means that the injury must have a relationship in time and location with the employment. *See Hebert v. Int'l Paper Co.*, 638 A.2d 1161, 1162 (Me.1994). In *Hebert*, the plaintiff's mental distress injury was caused by signs posted at his place of employment which demeaned the plaintiff who was at home recuperating from a work-related accident. *Id.* at 1162–63. We held that the exclusivity provision of the Act was not applicable because even though the mental distress injury may have arisen out of the employment, it did not arise in the course of employment. *Id.* at 1162. Arising in the course of employment requires focusing on the "temporal and spatial circumstance of

the worker's sustaining of injury." *Id.* Hawkes' injuries caused by the surveillance actions of Commercial Union did not arise in the course of his employment because the injury was not related in either time or space to his employment. His employment ended in 1984, eight years before these claims are alleged to have arisen. These torts occurred at and near his home; they did not occur at Giberson Buick's place of business; and they did not occur in furtherance of the business of Giberson Buick. Thus, Hawkes' injury did not occur in the course of his employment.

[¶ 14] Because the economic injuries suffered by Hawkes are not personal injuries and because the personal injury claims against Commercial Union did not arise in the course of his employment, the immunity and exclusivity provisions of the Workers' Compensation Act do not apply, and Commercial Union is not entitled to summary judgment on this ground.

### C. *Gibson, Procise, and Lavoie*

[¶ 15] In their arguments the parties have relied on a trio of cases involving suits against employers and/or insurers by employees whose receipt of workers' compensation benefits was delayed, reduced, or denied and in which we have arrived at differing results. The first is *Gibson v. Nat'l Ben Franklin Ins. Co.*, 387 A.2d 220, 223 (Me.1978), where we held that an insurer who wrongfully withheld workers' compensation benefits was not immune from liability in tort to the injured employee. We found that the case did not arise out of the employment relationship "but out of [the employee's] relationship to the

insurance carrier after her basic remedies as an injured employee had been settled through procedures provided by the Act." *Id.* at 222.

[¶ 16] In *Procise v. Elec. Mut. Liab. Ins. Co.*, 494 A.2d 1375, 1382 (Me.1985), however, we held that an insurer was immune from a suit for fraud, bad faith, and other claims in which the employee's basic contention was that he was wrongfully denied workers' compensation benefits. Procise claimed that his employer had persuaded him to apply for disability benefits instead of workers' compensation benefits and to state that his injury was not caused by a work accident. *Id.* at 1378. When he later applied for workers' compensation benefits, he settled his claim. *Id.* In his tort action he asserted that he had been denied workers' compensation benefits to which he was entitled by the actions of his employer, its insurer, and their agents. *Id.* at 1378–79. We noted that the Workers' Compensation Act contains a procedure to set aside a settlement agreement when there is a mistake of fact or fraud, but that Procise had not taken advantage of that procedure. *Id.* at 1382. We distinguished *Gibson* by stating that Gibson's claim arose not from her employment but from her relationship with the insurer after her workers' compensation claim had been settled, whereas Procise's claims arose from the initial handling of his workers' compensation claim.[5] *Id.* at 1382–83.

[¶ 17] In *Lavoie v. Gervais*, 1998 ME 158, ¶ 11, 713 A.2d 335, 337, we held that an employer and its insurer were immune from suit where the employee alleged that he had been denied workers' compensation

---

5. In *Breton v. Travelers Ins. Co.*, 147 F.3d 58, 61 (1st Cir.1998), the First Circuit Court of Appeals suggests that in *Procise* we limited the holding of *Gibson*. Breton sued the workers' compensation insurer for intentionally delaying the payment of his benefits. *Id.* at 59. The First Circuit found that Breton's tort action, like Procise's action, arose from the handling of the workers' compensation claim. *Id.* at 62. In concluding that Breton's suit against the insurer was barred by the immunity and exclusivity provisions, the court found it significant that Breton had not alleged that there had been a final adjudication by the Workers' Compensation Board regarding his benefits. *Id.* The court also relied on the fact that the Act itself provides an administrative remedy for the delay of benefits. *Id.* at 63. *See* 39-A M.R.S.A. § 324(2)(A) (Pamph.2000) (providing that an insurer who fails to pay can be assessed a penalty of $200 for each day of noncompliance, of which $50 goes to the employee).

benefits because of fraud committed during the workers' compensation proceedings. Lavoie contended that the defendants and others had conspired to hide the true identity of the employer. *Id.* ¶ 5, 713 A.2d at 336. We held that the Act itself contains the exclusive remedy for fraud occurring during the course of the proceedings for benefits. *Id.* ¶ 13, 713 A.2d at 338; *see* 39–A M.R.S.A. § 321 (Pamph. 2000). We cited *Procise* for the proposition that when the tort action is based on a claim of wrongful denial of workers' compensation benefits, the Workers' Compensation Act provides the exclusive remedy. *Lavoie,* 1998 ME 158, ¶ 13, 713 A.2d at 338.

[¶ 18] We need not attempt to harmonize these cases, because they differ significantly from the instant case.[6] The injuries alleged in the three cases arose from the denial or delay of workers' compensation benefits. Hawkes, unlike the three plaintiffs in *Gibson, Procise,* and *Lavoie,* is not claiming that he is entitled to more workers' compensation benefits or that his receipt of benefits was interfered with or delayed. He does not complain about his benefits; he does not contend that they were delayed, denied, or reduced because of the actions of the tortfeasors. This is in sharp contrast to the gravamen of the complaints in *Gibson, Procise,* and *Lavoie.* For this reason, the holdings of *Gibson,*

*Procise,* and *Lavoie* are inapplicable to this case.[7]

## III. THE LUMP SUM SETTLEMENT DOCUMENTS

◼◼◼ [¶ 19] Commercial Union also appeals the denial of its summary judgment motion on the issue of whether, by signing the settlement documents, Hawkes released Commercial Union from all liability. Ordinarily the denial of a summary judgment motion on this issue would not be immediately appealable. *See, e.g., Chaput v. Unisys Corp.,* 964 F.2d 1299, 1302 (2d Cir.1992) (holding denial of summary judgment based on defense of release not immediately appealable). However, the case is properly before us on the issue of Commercial Union's immunity under the Workers' Compensation Act, and the parties have fully briefed and argued the issue of the settlement documents. Therefore, in the interests of judicial economy, we may address this issue because if we were to determine that Hawkes released Commercial Union from all liability, the entire case against Commercial Union would be ended. *See Struck v. Hackett,* 668 A.2d 411, 419 (Me.1995); *Ryan v. City of Augusta,* 622 A.2d 74, 76–77 (Me.1993).

◼◼◼ [¶ 20] The Superior Court found that the settlement documents signed by Hawkes are ambiguous. While the inter-

6. As the First Circuit emphasized in *Breton,* holdings in these cases are so fact specific, they must be limited to the particular cases. *Breton,* 147 F.3d at 64.

7. A further distinguishing factor is that Hawkes, unlike Procise and Lavoie, has no remedy under the Workers' Compensation Act for his tort claims. Procise and Lavoie, who both claimed that they had been defrauded out of their workers' compensation benefits by their employers, could have followed the procedures under the Act to seek the benefits to which they believed they were entitled. There are no such remedies within the Act to benefit Hawkes.

The Workers' Compensation Board is required to establish an abuse investigation unit which, when directed by the Board, investigates complaints of illegal or improper conduct of insurers relating to workers' compensation benefits. 39–A M.R.S.A. § 153(5) (Pamph.2000). Reports of such investigations go to the Board, and if the Board determines that fraud or other violations of the Act occurred, it shall report such to the Attorney General. *Id.* § 153(5)(D), (E). The Board is also authorized to assess civil penalties, up to $10,000, upon finding that an employer or insurer "has engaged in a pattern of questionable claims-handling techniques." *See id.* § 359(2) (Pamph.2000). Neither of these statutes provide any remedy to an individual claimant. *Compare* 39–A M.R.S.A. §§ 153, 359 *with* 39–A M.R.S.A. § 324(2)(A) (Pamph. 2000) (providing that an insurer who fails to pay benefits can be assessed a penalty of $200 for each day of noncompliance, of which $50 goes to the employee).

pretation of unambiguous contracts is a matter of law, the interpretation of ambiguous contracts is a matter of fact. *Spottiswoode v. Levine*, 1999 ME 79, ¶ 16, 730 A.2d 166, 172. For this reason, the Superior Court denied summary judgment.

[¶ 21] The three documents signed by Hawkes, which were executed at the time of the lump sum settlement, must be read together. *Hilltop Community Sports Ctr., Inc. v. Hoffman*, 2000 ME 130, ¶ 16, 755 A.2d 1058, 1062. Principles of contract govern the interpretation of lump sum settlement agreements. *Soucy v. Sullivan & Merritt*, 1999 ME 1, ¶ 7, 722 A.2d 361, 363. Unless a workers' compensation settlement agreement explicitly waives the right of the claimant to bring another type of claim against the insurer or the employer, such a waiver will not be implied in the absence of evidence of the intent of the parties at the time of contracting to create the waiver. *Id.*

[¶ 22] There is one sentence in Hawkes' affidavit that, when taken by itself, would seem to release Commercial Union from all claims against it. That sentence is that Hawkes fully understands that he will no longer be able to make any claims against Commercial Union if his lump sum petition is granted by the Workers' Compensation Commission. However, the remainder of the two-page affidavit concerns Hawkes' understanding of the meaning of the lump sum settlement and that he is giving up the ability to make any claim under the Workers' Compensation Act arising out of his 1984 injury. Likewise, the other two documents clearly state that Commercial Union is being released only for claims arising out of Hawkes' employment with Giberson Buick–Pontiac and for claims stemming from the 1984 injury. Thus, most of the affidavit and the other two documents unambiguously indicate that the sole liability under consideration was that of Commercial Union and Giberson

Buick for the 1984 injury and compensation under the Workers' Compensation Act. An ambiguity arises, however, because of the one sentence, referred to above, in the affidavit. That ambiguity is whether the three documents taken together release Commercial Union for liability stemming only from the injury sustained by Hawkes at Giberson Buick, or whether they also bar Hawkes' claim for damages caused by Commercial Union's investigation. Because there is an ambiguity and the meaning of the documents is disputed, summary judgment is inappropriate. *See Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730–31 (Me. 1994) (holding summary judgment inappropriate when contract is ambiguous and undisputed facts do not determine intent of parties).

The entry is:

Order denying summary judgment affirmed.