STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket No. CV-06-236

FILED & ENTERED
SUPERIOR COURT
AUG 0 2 2007
PENOBSCOT COUNTY

Douglas G. Tibbetts,
    Plaintiff


    v.                           Order (Motions to Dismiss)


St. Joseph Hospital Inc.,
    Defendant


Pending before the court are the motions of defendant St. Joseph Hospital, Inc. to dismiss the three counts of plaintiff Douglas G. Tibbetts' complaint. The court has considered the parties' written arguments associated with the motions.

Tibbetts has asserted two tort claims against the hospital and one claim for breach of contract, all arising out of his allegations that he was improperly discharged from an employment position with the hospital. In one motion, the hospital moves to dismiss the two tort claims, and in its second motion, the hospital moves to dismiss the contract claim. Both motions ultimately are predicated on the hospital's contention that Tibbetts' claims do not entitle him to relief in the courts.

"A motion to dismiss tests the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss, the court takes the allegations to be true. *In re Wage Payment Litigation*, 2000 ME 162, ¶ 3, 752 A.2d 217, 220. From this starting point, the complaint then is examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *McAfee*, 637 A.2d at 465. A dismissal is proper "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266 (Me. 1985). *See also Heber v. Lucerne-in Maine Village Co.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

1

In his complaint, Tibbetts makes the following allegations. Tibbetts is a former employee of St. Joseph Hospital. (Am. Compl. ¶¶ 3, 11.) Tibbetts began working for St. Joseph as a sanitary technician in November 1997. (*Id.* ¶ 3.) The position required Tibbetts to lift or carry objects up to ten pounds in weight on a frequent basis and lift or carry objects between eleven to twenty-four pounds in weight on occasion. (*Id.* ¶ 4.) Tibbetts, however, suffered a left shoulder injury outside of work in June 2003. (*Id.* ¶ 5.) In July 2003, Tibbetts' supervisor at the hospital required Tibbetts to obtain a work restriction note from his doctor. (*Id.* ¶ 5.) On July 7, 2003, Tibbetts provided St. Joseph with the note, and St. Joseph allowed him to work with the recommended restrictions. (*Id.* ¶ 6.) At some point between July 7, 2003 and July 21, 2003, however, Tibbetts' supervisor told Tibbetts that he could not come back to work until he had an operation on his shoulder and was cleared for work by his doctor. (*Id.* ¶ 7.) Tibbetts subsequently had rotator cuff surgery on August 19, 2003, and was cleared to return to work on November 11, 2003 with a twenty-five pound maximum lifting restriction, to be increased at some point to a permanent thirty-five to forty pound lifting restriction. (*Id.* ¶ 9.) Nonetheless, St. Joseph terminated Tibbetts on October 11, 2003, effective October 13, 2003. (*Id.* ¶ 11.)

Tibbetts filed a complaint against St. Joseph, asserting claims of negligent misrepresentation (count 1), breach of contract (count 2), and fraud (count 3). St. Joseph subsequently filed a motion to dismiss counts 1 and 3 of the complaint (the tort claims) and a separate motion to dismiss count 2 (the contract claim). After Tibbetts filed his opposition to the motions, he moved to amend count 2 of the complaint. The court granted the motion to amend. St. Joseph thereafter filed a motion to dismiss count 2 as amended, and Tibbetts filed a timely opposition.

### A. Motion to dismiss counts 1 and 3

The hospital argues that Tibbetts is barred from pursuing his civil tort claims against it because, the hospital contends, it is protected from civil tort liability under the immunity and exclusivity provisions of the Workers' Compensation Act (WCA). *See* 39-A M.R.S.A. §§ 104, 408. Section 104 of the WCA, which establishes the exclusivity provision, provides: "An employer who has secured the payment of compensation... is exempt from civil actions [at] common law... involving personal injuries sustained by an

employee arising out of and in the course of employment." *Id.* § 104. Section 408 of the WCA, which is the immunity provision, provides further that "an employee of an employer who has secured the payment of compensation... is deemed to have waived the employee's right of action at common law and under section 104 to recover damages for the injuries sustained by the employee." *Id.* § 408. Because section 104 is referred to in section 408, the two provisions are "interrelated" and considered together. *Hawkes v. Commercial Union Insurance Co.*, 2001 ME 8, ¶ 7, 764 A.2d 258, 263.

"The applicability of the Workers' Compensation Act with its exclusivity provision is a threshold question that determines whether a common law civil action can proceed at all." *Knox v. Combined Ins. Co.*, 542 A.2d 363, 365 (Me. 1988). That provision is to be defined and applied broadly, *Cole v. Chandler*, 2000 ME 104, ¶ 10, 752 A.2d 1189, 1195, and it has been held that the provision bars lawsuits not only for negligence, but also for intentional torts. *Searway v. Rainey*, 1998 ME 86, ¶ 3, 709 A.2d 735, 736. Thus, the exclusivity provision of the WCA can operate to bar a claim for negligence and for fraud, which are the two tort claims at issue here. Neither party contests this notion.

An injury is compensable under the WCA, and employers are immune from civil suit related to the injury, when an employee "(1) suffer[s] a personal injury, 2) that arises out of and 3) in the course of employment." *Knox*, 542 A.2d at 366. In contrast, "losses which are a consequence of life in general will be borne by the individual." *Comeau v. Maine Coastal Services*, 449 A.2d 362, 366 (Me. 1982).

An injury "arises out of" employment where there exists "some causal connection between the conditions under which the employee worked and the injury which arose, or that the injury, in some proximate way, had its origin, its source, its cause in the employment." *Easler v. Dodge*, 1999 ME 140, ¶ 6, 738 A.2d 837, 838-39 (citing *Morse v. Laverdiere's Super Drug Store*, 645 A.2d 613, 614 (Me. 1994)). The "arising out of" inquiry implicates a number of more specific factors. *See Comeau*, 449 A.2d at 367.

The condition that the injury must be in the "course of employment" is an inquiry that "relate[s] to time, place and circumstances under which the accident takes place. An accident [occurs] in the course of employment when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his

3

or her duties or engaged in doing something incidental thereto." *Easler*, 1999 ME 140, ¶ 5, 738 A.2d at 838 (citing *Northern Security Insurance Co. v. Dolley*, 669 A.2d 1320, 1324 (Me. 1996)).

Factors to consider in determining whether an injury "arises out" of and in the "course of" employment are: 1) "Whether at the time of the injury the employee was promoting an interest of the employer or the activity of the employee directly or indirectly benefited the employer;" 2) "Whether the activities of the employee work to the benefit or accommodate the needs of the employer;" 3) "Whether the activities were within the terms, conditions or customs of the employment, or acquiesced in or permitted by the employer;" 4) "Whether the activity of the employee serves both a business and personal purposes, or represents an insubstantial deviation from the employment;" 5) "Whether the hazard or causative condition can be viewed as employer or employee created;" 6) "Whether the actions of the employee were unreasonably reckless or created excessive risks or perils;" 7) "Whether the activities of the employee incidental to the employment were prohibited by the employer either expressly or implicitly;" 8) "Whether the injury occurred on the premises of the employer." *Comeau*, 449 A.2d at 367. In addition to enumerating these considerations, however, the *Comeau* Court cautioned that they "do not create a dispositive checklist: rather, they are but factors on the scale weighing toward or against a finding that the injury arose out of and in the course of employment. While one factor may not be solely determinative, strong evidence on one aspect of work-connection may sometimes support an award of compensation despite contrary evidence relating to other considerations." *Id.*

This examination of the content of the immunity and exclusivity provisions of the WCA make it evident that the defense is intensively driven by facts. Even in the context of an appeal from a summary judgment, where the parties had created a factual record, the Law Court noted,

> Necessarily involved in that determination whether by a court ruling on the applicability of the exclusivity provision of the Act, as in this case, or by a Workers' Compensation commissioner deciding if the injury is covered by the Act, are factual findings that we as an appellate court are ill-suited to make . . . .There may be no objective "correct conclusion" as to the applicability of the Act and different factfinders may decide similar cases differently. . . .[T]hat uniquely factual determination must be made by the trial court.

4

*Knox*, 542 A.2d at 366 (internal citation omitted). *See also Abbott v. Inhabitants of the Town of Sanford*, No. AP-2007-03, 2007 Me. Super. LEXIS 106, at *8 (Me. Super. Ct. May 29, 2007) (Brennan, J.) ("Determining whether such an injury arose 'out of or in the course of employment' involves an inherently factual inquiry.... The MWCA, therefore, is not a proper basis for dismissing this claim until a more substantial record is developed that would support immunity."); *Clark v. Means*, No. CV-01-170, 2002 Me. Super. LEXIS 1, at *5 (Me. Super. Ct. January 15, 2002) (Hjelm, J.) ("[A] Complaint cannot fairly be treated as a comprehensive rendition of all of the circumstances that might be relevant to [the immunity argument]. A pleading is not required to provide that level of factual detail, either in scope or depth.").

Here, Tibbetts' allegations – particularly when they are viewed with the level of deference required under the analysis invoked by rule 12(b)(6) – cannot be viewed in a way that necessarily precludes the possibility that he might be entitled to relief for his tort claims. Immunity and exclusivity are affirmative defenses on which the hospital will bear the ultimate burden of proof. *See* M.R.Civ.P. 8(b). The circumstances as Tibbetts has alleged them in his complaint do not establish as a matter of law that his tort claims will inevitably fail. Rather, consideration of the WCA defenses that the hospital may pursue ultimately will turn on a collection of factual circumstances. The outcome of that analysis cannot be determined on the sole basis of Tibbetts' pleading. Thus, St. Joseph's motion to dismiss counts 1 and 3 must be denied, and an examination of the merits of its defenses must await the development of a concrete factual record.

Because Tibbetts' claims for negligence and fraud survive the hospital's motion to dismiss in their entirely, the court need not and does not reach the question of the extent to which, if the hospital's defenses do apply, Tibbett's injuries are "personal" within the meaning of the WCA.

## B. Motion to dismiss count 2

St. Joseph next moves to dismiss count 2 of Tibbetts' complaint, which, as amended, simultaneously alleges the grounds of breach of contract and promissory estoppel. With respect to breach of contract, St. Joseph argues that the complaint fails to allege an employment agreement that restricted St. Joseph's ability to terminate Tibbetts

at-will. "In Maine it has long been the rule that a contract of employment for an indefinite length of time is terminable at the will of either party." *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97, 99 (Me. 1984). However, the "one exception" to this rule " is that parties to an employment contract of indefinite duration 'may enter into an employment contract terminable only pursuant to its express terms -- as 'for cause' -- by clearly stating their intention to do so.'" *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 155 (Me. 1991) (citing *Larrabee*, 486 A.2d at 99-100).

Tibbetts alleges that the employment contract was amended when St. Joseph assured him that he could return to work after undergoing shoulder surgery. (Am. Compl. ¶¶ 15-16.) This allegation may be seen to constitute a claim that any at will status was modified contractually in a way that gave him the contractual right to return to his previous employment position. This allegation is sufficient to allow Tibbetts to proceed with his claim that the parties entered into a contract that entitled him to employment and that the hospital breached the contract. Whether or not he can produce evidence of the express terms of a contract modification and of St. Joseph's intent to modify the contract as such is a matter that will be the subject of a factual record, either in the context of a motion for summary judgment or trial itself.

The entry shall be:

For the foregoing reasons, the defendant's motions to dismiss are denied.

Dated: August 1, 2007

Justice, Maine Superior Court
Jeffrey L. Hjelm

DOUGLAS G TIBBETTS VS ST JOSEPH HOSPITAL INC
UTN:AOCSsr  -2006-0121972                    CASE #:BANSC-CV-2006-00236
--------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE       DATE
01 0000002551 ATTORNEY:GREIF, ARTHUR   + Andrea Wan
ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339
     F FOR:DOUGLAS G TIBBETTS                PL          RTND   10/25/2006

02 0000002247 ATTORNEY:MCGUIRE, FRANK T
ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
     F FOR:ST JOSEPH HOSPITAL INC            DEF         RTND   11/27/2006

03 0000008163 ATTORNEY:STOREY, ANNEMARIE L
ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
     F FOR:ST JOSEPH HOSPITAL INC            DEF         RTND   11/27/2006


                        *More Attorneys*
          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.